John Val **WILLIAMS**, Appellant,

v.

**The STATE of Oklahoma, Appellee.**

No. M–75–683.

Court of Criminal Appeals of Oklahoma.

Sept. 14, 1976.

John W. Taber, Chandler, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Toby Mash, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellant, John Val Williams, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Lincoln County, Case No. CRM–74–443, for the offense of Negligent Homicide, in violation of 47 O.S.1971, § 11–903. His punishment was fixed at a term of imprisonment of one (1) year, and from said judgment and sentence a timely appeal has been perfected to this Court.

The State called as its first witness Richard W. Plantz who testified that on October 12, 1974, at about 4:00 P.M., he and his wife were traveling west out of Stroud, Oklahoma, on State Highway 66. While they were traveling up a grade, approximately one-half mile west of Stroud, the witness observed a boy on a bicycle coming over the crest of the hill traveling in an easterly direction in the center of the eastbound lane. He further testified that "a second or so later" a young man on a motorcycle, also traveling east, topped the hill behind the bicycle. He stated that the motorcycle was also in the center of the eastbound lane. The witness then lost sight of the motorcycle "for a second or less" when he observed, in his rearview mirror "the motorcycle and the bicycle go up in the air." The witness then returned to the scene of the accident where he observed the motorcycle lying on the north side of the road with the operator under-

neath it struggling to get up. Subsequently the witness located the body of the victim, which had been thrown some distance from the lane where the witness had last seen him.

The State called as its next witness Wayne Smith, who was a patrolman for the City of Stroud. On the afternoon of October 12, 1974, at approximately 4:00 P.M., Officer Smith was parked at a Mobil Station at the west end of the town when he was approached by persons who informed him that there had been an accident just west of town. Officer Smith radioed for an ambulance and then proceeded to the place of the accident. The Officer testified that when he arrived the defendant was sitting on his motorcycle on the north side of the highway, where it came to rest. He also testified that the body of the victim, Steven Wright, was lying 75 to 80 feet west of the defendant on the same side of the highway. After locating the body and while waiting for the arrival of the ambulance the witness determined that the victim was breathing slightly.

The State's next witness was Ken Osborn, a Highway Patrolman for the State of Oklahoma, testified that he was called to the scene of this accident for the purpose of making an investigation. When he arrived, shortly after 4:00 P.M., the defendant and the victim had already been removed from the scene by ambulance. While at the scene of the crash Officer Osborn determined that there were 105 feet of skid marks made by the rear tire of the defendant's motorcycle prior to the impact and subsequent thereto another hundred feet of skid marks, also made by the motorcycle. He also determined that from the point of impact the bicycle, on which the victim was riding, skidded on its side 254 feet to the east. And, the body of the deceased was thrown 101 feet east of the point of impact. This data, gathered by Officer Osborn, was fed into a computer which allowed him to determine the minimum possible speed of the defendant's motorcycle at the point of impact. However,

on one occasion Officer Osborn testified that the calculations indicated a minimum possible speed of 69 miles per hour. But, on two separate occasions he stated that the minimum possible speed would have been 79 miles per hour. Not having a transcript of the preliminary hearing or traffic investigation reports, we are unable to clearly determine the estimated minimum possible speed.

Officer Osborn further testified that at the point of impact the highway is 22 feet wide, each lane constituting 11 feet thereof. He testified that the impact of the crash occurred directly in the center of the eastbound lane, 5 feet 6 inches from the center of the highway. Officer Osborn also stated that the speed limit in this vicinity was 55 miles per hour.

As its next witness, the State called Wesley H. McWilliams, a resident of Wellston, Oklahoma, who testified that on October 12, 1974, he was approaching the town of Stroud, Oklahoma, when he came upon the scene of the accident hereinbefore related. The witness testified that immediately prior to his arrival upon the scene of the accident a young man on a motorcycle accelerating at a rapid rate of speed, pulled into the witness's lane of traffic causing the witness to slow down. He further stated that by the time he had regained his speed of approximately 55 miles per hour the motorcycle had already disappeared over the hill in front of him. And, it was just beyond that hill that the witness observed the results of the crash.

The State called, as its final witness, C. Conrad Markart, a doctor who resided in Stroud. Dr. Markart testified that at 4:10 P.M. on the afternoon of October 12, 1974, he was summoned to the emergency room in the hospital at Stroud where he examined the body of Steve Wright and determined him to be dead. The doctor also testified that, in his opinion, the victim died from multiple contusions of the head and body resulting from the crash.

Thereafter the State rested.

The defendant called as his first witness Mildred Williams, also a Stroud resident, who testified that on the afternoon of October 12, 1974, she was traveling into Stroud from the west on Highway 66 when she observed the victim, Steven Wright, on his bicycle. She stated that the victim was weaving from side to side in the eastbound lane requiring her to slow down and pull her car into the left lane to avoid hitting him.

The defendant called, as his second witness, Marilyn Bolen, who also testified that on the afternoon of October 12, 1974, at approximately 4:00 P.M., she observed the victim, Steve Wright, operating his bicycle in the eastbound lane of traffic.

At this point, the defendant took the stand in his own behalf, testifying that on the afternoon of October 12, 1974, he went to the Stroud Skating Rink, west of town, to pick up his cousins for the purpose of giving them a motorcycle ride. However, he did not have helmets for them so he left the skating rink, going back to Stroud. Thinking that two of his sister's friends were following him in their automobile, he testified that he turned around momentarily to see if they were, in fact, behind him. As soon as he returned his eyes to the road in front of him he observed the victim, Steve Wright, at a distance of about 25 to 30 feet directly in front of him. The defendant then stated that he was not exceeding the posted speed limit of 55 miles per hour and that, furthermore, he was not operating his motorcycle in a reckless manner.

Thereafter the defendant rested his case.

 In the opinion of this Court, the defendant's second assignment of error presents a proposition of considerable import. In this assignment he contends that the trial court erred in refusing to instruct the jury in regard to the alleged negligent conduct of the deceased victim, Steven Wright. The defendant, in the presentation of his case and on cross-examination of Highway Patrolman Ken Osborn, pro-

duced uncontroverted evidence that the victim was riding in the exact center of the eastbound lane of traffic.[1] It was also the uncontradicted testimony of Mildred Williams that the deceased boy, just minutes prior to the accident, was weaving in and out of the eastbound lane requiring that she, in order to avoid hitting him, drive her automobile into the left lane. The defendant, in light of this evidence, contends that the jury should have been allowed to consider the negligence of the deceased as a factor in determining whether or not the conduct of the defendant was the cause of the victim's injury and his resulting death. The State, however, cites considerable authority in behalf of its argument that contributory negligence is not a defense in criminal proceedings, thus concluding that the trial court did not err in refusing to instruct as the defendant requested. We wholly agree with the State's contention that contributory negligence is not a defense in criminal matters. However, after a thorough examination of the arguments and authorities we are convinced that the issue herein presented by the defendant contemplates not the defense of contributory negligence but rather the factual determination of proximate cause. The statute, 47 O.S.1971, § 11–903(a), under which the defendant was prosecuted reads as follows:

"When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide."

For a conviction to be sustained under this statute the jury must determine that the death of the deceased was the proximate result of the defendant's reckless disregard of the safety of others, i. e., that the defendant's recklessness was the proximate cause of the death of the victim.[2] Throughout the trial the defendant's principle theory was premised on the alleged negligent actions of the deceased. In essence, a substantial part of the defendant's case rested on the issue of proximate cause. And, based on the evidence presented by the defendant he was entitled to consideration of all the actions by both the defendant and the deceased in arriving at a determination of proximate cause. In *State v. Bowser,* 124 Kan. 556, 261 P. 846 (1927), the Supreme Court of Kansas stated that:

"In a prosecution for manslaughter in the fourth degree caused by the alleged culpable negligence of defendant, while contributory negligence on the part of the decedent was not a defense, the court should have instructed the jury that the

---

1. 47 O.S.1971, § 11–1205(a) states:
 "Every person operating a bicycle upon a roadway shall ride as near to the right side of the roadway as practicable, exercising due care when passing a standing vehicle or one proceeding in the same direction."

2. The State of Washington has adopted a statute, R.C.W. § 46.61.520, with the identical "proximate cause" language as our 47 O.S.1971, § 11–903. In *State v. Baker,* 56 Wash.2d 846, 355 P.2d 806 (1960); *State v. Hardwick,* 74 Wash.2d 828, 447 P.2d 80 (1968), and *State v. Engstom,* 79 Wash.2d 469, 487 P.2d 205 (1971), this statute was judicially interpreted as requiring the accident, resulting in death, to be the proximate cause of the recklessness or misconduct.
 Also, in *Atchley v. State,* Okl.Cr., 473 P.2d 286 (1970), we held that our new statute, 47 O.S.1971, § 11–903, replaced and impliedly

repealed 21 O.S.1971, § 716 (Manslaughter in the Second Degree) to the extent that motor vehicles were involved. We stated the reason therefore as being the inconsistency in punishment (21 O.S.1971, § 716, constitutes a felony and 47 O.S.1971, § 11–903 a misdemeanor), between the two offenses, both of which have identical requirements for conviction. And, in *Chandler v. State,* 79 Okl. Cr. 323, 146 P.2d 598 (1944), it was held that to establish a conviction under 21 O.S.1971, § 716, the "culpable negligence" of the defendant must have been the proximate cause of the victim's death. Hence, if the requirements are the same in both statutes, the inclusion of a proximate cause requirement in 21 O.S.1971, § 716 necessitates an interpretation of the proximate cause language in 47 O.S.1971, § 11–903, as being consistent with the interpretation of 21 O.S.1971, § 716.

decedent's negligence, if shown, should be considered with all the other evidence to determine whether the negligence of defendant was the proximate cause of the killing or whether defendant's act or omission was culpably negligent under the circumstances." (Syllabus III)

See also, *State v. Sisneros*, 42 N.M. 500, 82 P.2d 274 (1938); *Fox v. State*, 145 Tex. Cr.R. 71, 165 S.W.2d 733 (1942); *Banks v. State*, 188 Ind. 353, 123 N.E. 691 (1919); and 67 A.L.R. 922.

In *McNutt v. State*, Okl.Cr., 288 P.2d 418 (1955), and *Nelson v. State*, Okl.Cr., 288 P.2d 429 (1955), this Court held that the respective defendants, being prosecuted for manslaughter resulting from alleged negligent operation of a motor vehicle, were entitled to instructions presenting their theories of the accident which asserted that the victim's actions were the proximate cause thereof. In *Nelson*, supra, we stated:

"Finally, defendant contends that the court should have instructed on the law in accordance with his requested instructions. This has relation particularly to requested instructions No. 6 and No. 7. Defendant's defense was predicated upon the proposition that young Hardman, and Barrett, were not operating the automobile with due regard for their own safety. The Barrett boy testified that immediately before they went into the intersection, he was looking across the street at the Crosstown Bar to see if he could observe some of their associates, who sometimes frequented that place; that his own evidence indicated they might not have been operating the automobile in which they were riding with that degree of care conducive to their own safety, as well as the safety of others. Such is the crux of the defendant's defense in the case at bar, and he was entitled to have an instruction covering this theory of defense of an accidental killing. The court's failure to instruct, on this theory, deprived the accused of a valuable right. If the decedent's failure

to exercise reasonable care and caution for his own safety was the proximate cause of his death, then, in that event, the defendant would not be liable."

■ This Court is also of the opinion that the trial court's failure to define the term 'proximate cause' in its instructions to the jury was reversible error. In 23A C.J. S. Criminal Law, § 1191, the general rule is set forth as follows:

"Terms used in instructions *should be defined by the court where they have a technical meaning*, or may be misapplied by the jury; but where the terms are in common use and are such as can be understood by a person of ordinary intelligence they need not be defined or explained in the absence of anything in the charge to obscure their meaning." (emphasis added)

The definition of "proximate cause" is clearly a term which is not within the common and ordinary knowledge of a layman. Its meaning has been the subject of much lengthy litigation. It is asking too much to expect a jury, without proper definition, to understand and apply such a technical term.

■ Although the requested instruction of the defendant was not in proper form and did not fully state the applicable law, it was sufficient to alert the trial court to the need for instructions presenting to the jury for their consideration the defendant's theory of the case. In *Nelson v. State*, supra, we cited as authority *Crossett v. State*, 96 Okl.Cr. 209, 252 P.2d 150 (1952), which held:

"If the instructions submitted appear to the court not to be in proper form, or fully or correctly state the issues, still, if the instructions submitted are sufficient to call the court's attention to the material issue raised and which has a basis of support in the evidence, it is the duty of the court to prepare and to give a proper instruction on the issue thus presented to the court.

"The policy of the law is that all persons shall have a fair and impartial trial. It cannot be said that a fair and impartial trial has been had unless the jury has been properly instructed as to the law of the case; and where the instructions do not fully present all the material issues raised, the judgment of the conviction will be set aside."

In conclusion, we are of the opinion that the trial court's failure to instruct the jury in regard to the defendant's theory of the case, and the failure of the trial court to define the term "proximate cause", resulted in prejudicial error. Based on this conclusion, the defendant's conviction is hereby REVERSED AND REMANDED for a new trial.

BRETT, P. J., and BUSSEY, J., concur.