Patrick McKINNON, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–86–691.

Court of Criminal Appeals of Oklahoma.

April 1, 1988.

Jim Fransein, Tulsa, for appellant.

Robert H. Henry, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Patrick McKinnon, was convicted in the District Court of Tulsa County, in Case No. CRF–85–4208, for the crimes of First Degree Rape in Count I and Forcible Sodomy in Counts II and III. A fourth crime of Rape by Instrumentation in Count IV was dismissed upon motion by the State. Punishment was set at twenty (20) years on Count I, five (5) years on Count II, and five (5) years on Count III, with Counts II and III to run concurrently. From these judgments and sentences, he appeals.

On the evening of November 1, 1985, the appellant escorted D.V. to Illusions, a local nightclub in Tulsa Oklahoma, where the two drank and danced throughout the evening. The appellant met D.V. at the Crystal Pistol, a topless dance club in Tulsa where she was employed as a stripper. At closing time, D.V. requested the appellant to take her home. However, the appellant

first drove to an adult bookstore, where they watched an adult film in the arcade. D.V. again requested that he take her home, but the appellant drove them back to his home at approximately 1:30 a.m., November 2, 1985. The appellant pulled D.V. into his bedroom, seated her on his bed and tried to take her coat off. As D.V. struggled with the appellant, she begged him to take her home, but he continued to take her coat off until it ripped, and then began to take her clothes off. Suddenly, he clipped a handcuff on her right wrist and hooked it to the foot of the bed and tied her other hand to the bedpost. He then blindfolded and gagged D.V. with two bandannas, disrobed her and tied both of her legs to the bedposts, and then momentarily left the room. The appellant returned to the room, completely naked, sat down on D.V.'s chest and forced her to sodomize him. He then clamped clothespins on the nipples of D.V.'s breasts and adjusted them tighter and tighter until she agreed to sodomize him again. The appellant untied her and retied her to the other end of the bed, left her feet untied, and forced D.V. to have intercourse with him. After he removed the clothespins from her breasts, the appellant again forced her to orally sodomize him. He then handcuffed D.V.'s hands behind her back, had intercourse with her again, and told her to stop crying or he would put the clothespins back on her breasts. As D.V. struggled, the appellant then orally sodomized her. Throughout the whole incident D.V. begged the appellant to take her home. The appellant agreed to her requests, but conditioned them on her performing another sex act. The appellant then unhooked the handcuffs in order to escort the victim to the bathroom. He finally agreed that if she would sodomize him five more minutes until he could ejaculate, he would take her home. However, even after this act occurred, the appellant rehandcuffed her to the bed. When the appellant's roommate called him, he momentarily left the room, and D.V. managed to free herself from the handcuffs. Just as she reached the bedroom door, the appellant caught her and told her to get dressed. He then drove her to the

Hollywood Apartments and released her at approximately 5:00 or 5:30 a.m. Subsequently, she notified the police.

Dr. James Mitchell, a resident in obstetrics and gynecology at Tulsa Medical College, testified that he performed a rape examination on D.V. shortly after the incident. He stated that D.V. had bruises on her nipples, as well as abrasions and bruises on her wrists and ankles. He further noted that her vagina was extremely red and swollen, indicating that trauma had occurred from something rubbing against her dry vaginal area. Dr. Mitchell stated that it was unlikely that she was sexually aroused during the rape because the normal vaginal secretions were not present to lubricate the vagina. Detective Robert Holman of the Tulsa Police Department testified that upon procuring a search warrant for the appellant's residence the police found the appellant's bedroom as described by the victim, as well as clothespins and four bandannas used to bind, gag and blindfold the victim.

■ In his first assignment of error, the appellant contends that the trial court erred when it failed to give an instruction on impeachment testimony with regard to the alleged inconsistencies in the prosecutrix's testimony. We disagree. Our review of the record reveals that the prosecutrix' testimony concerning the rape and sodomy was clear, convincing and unwavering, with only minor inconsistencies. The appellant has not shown that he was prejudiced by the omission of the instruction to warrant reversal. *Mills v. State*, 594 P.2d 374 (Okl.Cr.1979). Moreover the determination of which instructions shall be given to the jury is a matter within the discretion of the trial court provided that they fairly and correctly state the applicable law. *Allison v. State*, 675 P.2d 142 (Okl.Cr.1983). The instructions, in the case at bar, when considered in their entirety, did sufficiently apprise the jury of the applicable law which was supported by the evidence, therefore no error resulted from the trial court's failure to give the appellant's instruction on impeachment. This assignment is without merit.

■ Next, the appellant contends that he was prejudiced by various instances of mis-

conduct committed by the prosecutor throughout the trial. At the outset, we note that appellant failed to interpose a timely objection to most of these alleged instances of misconduct, thereby, waiving these issues for appellate review, except for fundamental error. *Thomson v. State,* 676 P.2d 857 (Okl.Cr.1984). The appellant first complains regarding the prosecutor's demonstrative use of handcuffs during his questioning of the prosecutrix as well as testimony of numerous sexually explicit magazines depicting bondage which were discovered in the appellant's home. The handcuffs were never introduced into evidence at trial, but remained in the jury's view throughout the proceedings until defense counsel renewed his objection prior to closing argument. The trial court then admonished the prosecutor to remove the handcuffs from the jury's view. Similarly, the magazines were not introduced into evidence. However, the State elicited information concerning the magazines during cross-examination. The appellant has not established how either of these alleged instances was so prejudicial as to have denied him a fair trial, and how either of them was verdict determinative where other direct evidence proved the appellant's guilt beyond a reasonable doubt. *Mills v. State,* 594 P.2d 374 (Okl.Cr.1979). He further asserts that the prosecutor's questioning of certain defense witnesses during cross-examination as well as improper comments during closing argument warrant a new trial. However, this Court has consistently held that it is not error alone that reverses the lower court's judgments, but error plus injury, and the burden is upon the appellant to establish the fact that he was prejudiced in his substantial rights by the commission of the alleged error. *Cook v. State,* 650 P.2d 863 (Okl.Cr.1982). In light of the strong evidence of appellant's guilt, and his failure to show that he was prejudiced by the alleged errors, we find that the lower court properly found the appellant guilty beyond a reasonable doubt. This assignment is without merit.

Finally, the appellant contends that he was denied effective assistance of counsel at trial because defense counsel did not object to the instances of alleged prosecutorial misconduct, and because he did not keep the court from admitting certain physical evidence such as the pornographic materials, the clothespins and bandannas. Our review of the record reveals that defense counsel afforded the appellant a comprehensive and effective defense sufficient to meet the requirements of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Moreover, we have already determined that the prosecutor's conduct was not verdict determinative in this case, in view of the strong evidence of the appellant's guilt and the absence of prejudice. Consequently, this assignment is without merit.

The judgments and sentences are AFFIRMED.

BRETT, P.J., and PARKS, J., concur.