Richard Eric HAMES, Appellant,

v.

STATE of Oklahoma, Appellee.

No. M–90–656.

Court of Criminal Appeals of Oklahoma.

Sept. 23, 1991.

Rehearing Denied Oct. 15, 1991.

Fred J. Shaeffer, Joel S. Barr, Norman, for appellant.

Robert H. Henry, Atty. Gen., Steven S. Kerr, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

LUMPKIN, Vice–Presiding Judge:

Appellant Richard Eric Hames was tried by jury for two counts of First Degree Manslaughter in Case No. CRF–89–777, in the District Court of Cleveland County. The jury found him guilty of two counts of Negligent Homicide (47 O.S.1981, § 11–903) and recommended punishment of one year imprisonment in the county jail and a fine of one thousand dollars ($1,000.00) on each count. The trial court sentenced accordingly, ordering the sentences to be served consecutively. It is from this Judgment and Sentence that Appellant appeals.

On June 11, 1989, at approximately 1:12 a.m. Officer Robert Moore, Norman Police Department, responded to the scene of a reported accident. Along East Robinson Street at approximately 60th Street he found a pickup truck on the south side of the road. The pickup was damaged on the right front corner. A few feet up the road he found the body of Lori DeShazer. Further along he found the body of Scott Eilerts. Bystanders were performing CPR on the bodies, although Officer Moore felt no pulse. Approximately 22 feet south of the road was found a three wheeled all-terrain vehicle (ATV), with damage to the rear.

Appellant approached Officer Moore and stated that he was the one the officer was looking for. Appellant admitted driving the truck and hitting the ATV. Detecting an odor of alcohol about the Appellant's breath and observing his watery eyes, slurred speech and unstable gait, Officer Moore opined that Appellant was intoxicated. Appellant was placed under arrest, transported to the Cleveland County Jail and given a breathalyzer test. He registered .20.

Evidence presented at trial showed that the decedents had been at a party at the home of J. Vaught on East Robinson. The ATV had been in the garage most of the night. The decedents took it out of the garage, drove it around the yard and then onto the street, driving east on Robinson. A pickup truck driven by Appellant came up behind them, hit the ATV causing the

decedents to be thrown off the vehicle and the ATV to be propelled into the ditch.

In his first assignment of error, Appellant contends that the breathalyzer machine used did not meet the requirements set forth by the Board of Alcohol and Drug Influence, pursuant to 47 O.S.1981, § 759.

The Officer's Affidavit prepared by the officer administering the breathalyzer shows that the test was given on a Stephenson 900 along with a breath simulator known as Smith & Wesson Mark IIA.

Rule 85–22 for the Board of Tests for Alcohol and Drug Influence (hereinafter referred to as the Board), approves the use of any of six (6) specifically listed breath simulator devices. The Board also approves the use of the "predecessor agency" of any of the six (6) specifically listed machines. Included in the approved list is "Model 900 and Model 900A Breathalyzer (manufactured by National Draeger, Inc., Pittsburgh, Pa. 15230 or its predecessors or successors)".

At the pre-trial hearing on Appellant's motion to suppress the breathalyzer results Lt. Judy, Norman Police Department, testified that he was one of the breathalyzer supervisors who maintains the breathalyzer machine and that it was his responsibility to do so in June 1989. The machine used in Cleveland County is a Stephenson Model 900. Lt. Judy reviewed a copy of applicable rules and regulations as provided by Appellant and stated he was familiar with Rule 85–22. He testified that the machine used in the present case complied with the rules because Stephenson is a predecessor company in manufacture of the machine. (Tr. 1–3–90, pg 5)

Appellant also presented a witness who testified that there was no corporate connection between Stephenson, Smith & Wesson and National Draeger.

■ We find that the State sufficiently proved that the breathalyzer was administered on an approved machine. Rule 85–22 does not address the corporate relationship of the manufacturers, but specifically approves the use of the "predecessor agency" of the listed manufacturers. Sufficient evidence was presented to show that the Stephenson 900 and Smith & Wesson Mark IIA were manufactured by a predecessor of National Draeger, Inc., Pittsburgh, Pa. 15230. Therefore, this assignment of error is denied.

Appellant contends in his second assignment of error, that the State failed to prove the proper procedures were used in obtaining the breathalyzer sample. The Officer's Affidavit (State's Exhibit 3) showed that two (2) tests were taken.

Officer Kelvin Winter testified that he was a licensed certified breathalyzer operator and administered the breathalyzer test to the Appellant. He performed a second test as a precautionary measure after he observed that the galvanometer was not balanced. (Tr. 102–103) He stated that such a defect does not affect the results of the test and that the machine was operating properly.

On cross-examination, Officer Winters admitted that under the applicable rules and regulations, no provision is made for a second breathalyzer test.

■ In *Westerman v. State*, 525 P.2d 1359 (Okl.Cr.1974), we held that it is the State's burden to prove compliance with the rules and regulations of the Board of Tests for Alcohol and Drug Influence. The testimony of officers as to the time and manner of the test can be sufficient proof of compliance. *Mayton v. State*, 721 P.2d 826, 828 (Okl.Cr.1986); *Bales v. State*, 674 P.2d 578, 579 (Okl.Cr.1984).

■ We find the testimony of Officer Winters, as well as Lt. Judy, sufficient to prove compliance. As explained in the next assignment of error, the second test was performed merely as a cautionary measure and ensured the accuracy of the test. Nothing in the rules directly prohibits a second test. Officer Winters' testimony as to the procedures used in administering the breathalyzer to the Appellant properly followed the rules set forth by the Board.

■ In his third assignment of error, Appellant alleges the trial court erred in admitting two breathalyzer results. Appellant argues that the cumulative effect of

the evidence greatly prejudiced him in the eyes of the jury.

In explaining the procedures used in administering the breathalyzer, Officer Winters testified that the breathalyzer machine is first purged with room air to make sure there is no alcohol in the machine. The galvanometer is balanced, with the needle reading zero. The accused then blows into the machine and a sample of his breath is taken for him to retain and test. The machine is again purged with room air. The accused then blows into the breathalyzer a second time and the amount of alcohol in the breath is read by the machine. The machine is again purged with room air.

In the present case, when the machine was purged after taking the sample of breath for the machine to test, the galvanometer was not balanced. Officer Winters testified that the needle was in an unusual position, one that he had never seen before. In order to make sure the results of Appellant's breath were correct, Officer Winters ran another test of Appellant's breath. Following the above procedure, Appellant blew into the breathalyzer a second time.

Officer Winters stated that if the galvanometer was not working properly, the test results would be inaccurate. However, the results in the present case were not substantially affected, the result of the first test being .20 and the result of the second test being .19.

Admissibility of evidence is within the trial court's discretion, and the court's ruling will not be reversed when there is no showing of prejudice to the defense or a breach of his fundamental rights. *Cooper v. State*, 671 P.2d 1168, 1173 (Okl.Cr.1983). Here, Appellant has failed to show how he was prejudiced by the evidence. Officer Winters thoroughly explained the reasons behind the two tests. The weight of the evidence and the credibility of the officer's testimony was for the jury to determine.

Further, Appellant urges us to adopt a procedure whereby the issue of the admissibility of the breathalyzer should be ruled upon by the trial court in a type of *Jackson v. Denno* hearing. *See Jackson v. Denno,*

378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). This type of procedure is currently available and was utilized in the present case.

■ It is the duty of the defendant to bring to the court's attention any possible errors. This should be done as early in the progress of the case as possible. Here Appellant filed a written pre-trial motion to suppress the breathalyzer results. (O.R. 74) Six days before the start of trial, the motion was heard. Appellant called two witnesses and challenged the State's compliance with the rules and regulations, specifically whether the breathalyzer machine was in proper working order and whether the manufacturer of the machine was approved by statute. The court continued the hearing for two days to allow the State to prove compliance with the rules and regulations in maintaining a breath sample for Appellant's independent test.

■ It is a legal determination whether or not the breathalyzer results should be suppressed or admitted. *Mayton v. State*, 721 P.2d at 828. Whether this decision is made prior to trial or during trial is dependent upon the particular facts and circumstances of the case. Here, Appellant was provided full opportunity, prior to trial, to challenge the admissibility of the results and show the court any possible noncompliance with the requisite rules and regulations. We find no error in the trial court's handling of Appellant's challenge to the breathalyzer. Accordingly, this assignment of error is denied.

In his fourth assignment of error, Appellant contends that because the breathalyzer results were inadmissible, there was insufficient evidence of "reckless disregard of the safety of others" to sustain a conviction for negligent homicide.

■ As discussed above, the breathalyzer results were properly admitted into evidence. In *Overton v. State*, 606 P.2d 586 (Okl.Cr.1979), we held that evidence of the defendant's intoxication was proof of his reckless disregard for the safety of others; stating that "driving under the influence could not in any manner be deemed the

actions of an ordinary prudent person." A driver whose actions threaten public health and safety is culpably negligent. A death resulting from such action is negligent homicide. *State v. Breger*, 737 P.2d 1219, 1220 (Okl.Cr.1987). We find sufficient evidence was presented to support the jury's finding of guilt.

■ In his fifth assignment of error, Appellant alleges the trial court erred in failing to give his requested jury instructions on proximate cause. Appellant alleges that the failure to give his requested instruction denied him an instruction on his theory of defense.

Throughout trial, Appellant's theory of defense was premised on the alleged negligent actions of the decedents. On appeal, Appellant asserts that his defense is not one of contributory negligence, but that the decedents' actions were the sole cause of their death.

It is well established that a defendant is entitled to any instructions on his theory of defense, provided such theory is tenable as a matter of law, or finds support in the evidence. *Green v. State*, 611 P.2d 262, 266 (Okl.Cr.1980); *Gann v. State*, 397 P.2d 686 (Okl.Cr.1964). If there is no evidence in the record to support an instruction, it should not be given. *Coulter v. State*, 721 P.2d 818, 819 (Okl.Cr.1986).

Appellant's theory of defense is not supported by the evidence. The record shows that the decedents were driving the ATV on the public roadway. It had been raining intermittently that night and the roads were wet. Testimony was conflicting as to whether the decedents had been drinking alcohol at the party and whether the ATV was in proper working condition. However, with all this in mind, the decedents did not merely run off the road or run into the truck, they were struck by the pickup from behind and the resulting injuries were the cause of death. The driver of the pickup was never at issue as Appellant admitted that he was the driver. Therefore, the conduct of the decedents cannot be the sole cause of their deaths.

■ Further, this Court has held that comparative negligence and contributory negligence are not defenses to a criminal charge. *Overton v. State*, 606 P.2d at 587; *Williams v. State*, 554 P.2d 842 (Okl.Cr. 1976).

The jury was instructed on the law of negligent homicide as follows:

No person may be convicted of Negligent Homicide unless the State proves beyond a reasonable doubt each element of the crime. These elements are: *First*, the death of a human being; *Second*, caused by the defendant driving a vehicle upon a highway; *Third*, in reckless disregard of the safety of others.

Reckless disregard of the safety of others is the omission to do something which a reasonable careful person would do, or the lack of the usual and ordinary care and caution in the performance of an act usually and ordinarily exercised by a person under similar circumstances and conditions. (O.R. 131)

Appellant's requested instruction provided "a negligent act is not 'proximate cause' of an accident unless accident could have been avoided in absence of such negligent act." (O.R. 145)

■ Although the trial court did not use the specific legal term "proximate cause", the instructions adequately informed the jury of the factual findings, i.e., that the deaths of the decedents were the proximate result of the Appellant's reckless disregard of the safety of others, which must be made in order to return a verdict of guilty of negligent homicide. When the instructions are read as a whole, we find that they fairly and adequately state the applicable law. *Nealy v. State*, 636 P.2d 378, 382 (Okl.Cr.1981). Accordingly, this assignment of error is denied.

After review of the errors alleged by Appellant, we are unable to conclude that any error has occurred which requires either reversal or modification of Appellant's sentence. Accordingly, the judgment and sentence is AFFIRMED.

LANE, P.J., and JOHNSON, J., concur.

BRETT and PARKS, JJ., dissent.

PARKS, Judge, dissenting:

I respectfully dissent. I am puzzled by the majority's determination that the trial court properly denied appellant a jury instruction on proximate cause. Denying him of his requested instruction stripped appellant of his defense.

The majority properly states that an accused is entitled to an instruction on any theory of defense if it finds possible support in the evidence, even if that evidence is discredited. *Broaddrick v. State*, 706 P.2d 534 (Okl.Cr.1985). However, contrary to the majority's determination, competent evidence existed to support appellant's theory. First, the accident occurred on a rainy night on a dimly lit road. Second, the decedents were driving a vehicle which was illegally operated on a public road. Third, there was evidence indicating that the decedent's vehicle had been stalling all evening but even with this knowledge, the riders chose to drive it. Fourth, the decedents knew or should have known that when this vehicle stalled, its lights would not operate. Fifth, an expert testified that at the time of the collision, the lights of the illegal vehicle were out. Finally, the autopsy report showed that decedents were intoxicated at the time of death.

Clearly, there was an abundance of evidence to support defendant's theory that the accident would have occurred regardless of his alcohol use.

I fail to follow the majority's logic in dismissing appellant's proposition. First, the majority states that "the decedents did not merely run off the road or run into the truck, they were struck by the pickup from behind and the resulting injuries were the cause of death." Although this statement is true, I fail to see its relevance. A stalled, small vehicle without lights could easily be run into on a dark, wet road. Therefore, the decedent's negligence may have been the proximate cause of their deaths.

Next, the majority states that the identity of the driver was not at issue. Again, this statement is irrelevant. Appellant never denied either at trial or on appeal that he was the driver of the pickup. In fact, he approached the police officer who came to the scene and informed him that he was the operator of the truck.

Third, the majority states that "comparative negligence and contributory negligence are not defenses to a criminal charge." This statement misses the mark. Appellant does not contend that comparative or contributory negligence is a defense. He merely contends that the trial court erred in failing to give an instruction on proximate cause.

Finally, the majority concludes that the jury instructions taken as a whole fairly stated the applicable law. It is true that this Court will consider whether instructions in their entirety accurately state the law. *McKinnon v. State*, 752 P.2d 833 (Okl.Cr.1988). However, where the trial court denied the defendant an instruction on his theory of defense, the jury could not possibly have known how to correctly apply and analyze all the evidence in order to come to a determination of guilt or innocence.

In *Williams v. State*, 554 P.2d 842 (Okl. Cr.1976), this Court held that the trial court committed reversible error by denying defendant a proximate cause instruction in a negligent homicide case. There, we stated:

> While contributory negligence on the part of decedent was not a defense, the court should have instructed the jury that the decedent's negligence, if shown, should be considered with all the other evidence to determine whether the negligence of the defendant was the proximate cause of the killing or whether defendant's act or omission was culpably negligent under the circumstances.

*Williams* at 845–46 *quoting State v. Bowser*, 124 Kan. 556, 261 P. 846 (1927).

For the foregoing reasons, I would find that the trial court committed fundamental error by failing to provide the jury with defendant's requested proximate cause instruction.