2007 OK CR 43

Cheryl Lynn BELL, Appellant

v.

STATE of Oklahoma, Appellee.

No. F–2005–1185.

Court of Criminal Appeals of Oklahoma.

Nov. 15, 2007.

John Hunsucker, James Todd, Oklahoma City, OK, Attorneys for Defendant at trial.

Bret Burns, Tyler Lowe, Assistant District Attorneys, Chickasha, OK, Attorneys for State at trial.

Bobby G. Lewis, Appellate Defense Counsel, Norman, OK, Attorney for Petitioner on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Heath Robinson, Assistant Attorney General, Oklahoma City, OK, Attorneys for Respondent on appeal.

### *OPINION*

CHAPEL, Judge.

¶ 1 Cheryl Lynn Bell was tried by jury and convicted of two counts of First Degree Misdemeanor Manslaughter in violation of 21 O.S.2001, § 711(1), in the District Court of Grady County, Case No. CF–2004–196. In accordance with the jury's recommendation the Honorable Richard G. Van Dyck sentenced Bell to two sentences of five years imprisonment, to run consecutively. Bell appeals from these convictions and sentences and raises seven propositions of error. After thorough consideration of the entire record before us on appeal, including the original record, transcripts, exhibits and briefs, we find that Bell's sentences must be modified. No further relief is required.

¶ 2 In Proposition I, Bell claims, as she did at trial, that she cannot be convicted of misdemeanor manslaughter where the misdemeanor charge is driving while impaired. Bell bases this claim on *State v. Breger.*[1] *Breger* held that, while driving under the influence would support a misdemeanor manslaughter charge, a homicide while driving while impaired was properly charged as negligent homicide.[2] In denying Bell's motion to quash on these grounds, the trial court acknowledged *Breger* but found that public policy had changed since that case was decided, and allowed Bell's trial for misdemeanor manslaughter to proceed. Both the trial court and prosecutor stated that the final resolution of the issue would be left to this Court. Bell's pretrial attempt to appeal that decision by extraordinary writ was denied by this Court as untimely.

¶ 3 After reviewing the law, this Court has concluded that *Breger* must be overturned. The legal issues here turn on the interplay between the misdemeanor manslaughter statute and the negligent homicide statute. Homicide is misdemeanor manslaughter when it is perpetrated without a design to effect death, by a person engaged in the commission of a misdemeanor.[3] This statute does not distinguish among type or category of misdemeanor. The misdemeanor of driving under the influence has long been held to be a predicate crime for misdemeanor manslaughter.[4] The negligent homicide statute applies specifically to deaths occurring within one year as a proximate result of injury received when a person drives a vehicle in

1. 1987 OK CR 98, 737 P.2d 1219.

2. *Id.* at 1220.

3. 21 O.S.2001, § 711.

4. *Breger,* 737 P.2d at 1220; *White v. State,* 1971 OK CR 141, 483 P.2d 751, 753; *Ritchie v.* *Raines,* 1962 OK CR 101, 374 P.2d 772, 777. *But see Hames v. State,* 1991 OK CR 102, 818 P.2d 904 (DUI case charged as negligent homicide; issue of appropriate statute was not raised on appeal).

reckless disregard of the safety of others.[5] We have held that homicide, occurring as a result of reckless driving is negligent homicide.[6]

¶ 4 *Breger* focused primarily on the enactment of the negligent homicide statute. The Court found that the Legislature intended that statute to be used where a death resulted from reckless driving. The Court distinguished the use of driving under the influence as a predicate for misdemeanor manslaughter in part by emphasizing the level of intoxication necessary for that crime. In comparing driving while impaired to driving under the influence, the Court noted that driving with a blood alcohol level of between .05 and .10 (at the time) was not in itself a crime. The Court also compared the punishments for reckless driving, driving while impaired, and driving under the influence. At the time, driving while impaired was punishable by a fine only, while the other two crimes were punishable by a fine and jail time. Essentially, the Court compared the punishments and decided that driving while impaired was not a serious enough misdemeanor to support a misdemeanor manslaughter charge.[7]

¶ 5 The conclusion in *Breger* is not supported by the language of the misdemeanor manslaughter statute. The State correctly notes that, since *Breger*, the Legislature has revised the punishments for all three crimes. Driving while impaired is now punishable by a fine of up to $500 and up to six months in jail; reckless driving carries the same maximum fine and up to 90 days in jail. It was this change in punishment which persuaded the trial court that public policy had changed and Bell's prosecution should be allowed. We do not disagree with the trial court's conclusion. Driving while impaired is a misdemeanor separate from reckless driving. It is a proper predicate offense for a charge of misdemeanor manslaughter. Proposition I is denied, and *Breger* is overruled.

¶ 6 In Proposition IV Bell correctly claims that pervasive prosecutorial misconduct deprived her of a fair trial. Bell raises six categories of alleged prosecutorial misconduct, in questioning and argument. Concerning argument, both parties have wide latitude to argue and make inferences from the evidence, and error in argument will not warrant relief unless the defendant is deprived of a fair trial and has suffered prejudice.[8] Some of these allegations of error were preserved for appeal; some were not; some were cured when Bell's objections were sustained. Taken as a whole, the prosecutor's conduct crossed the line of acceptable behavior to Bell's prejudice. This Court has twice, in published cases, found this prosecutor engaged in improper argument.[9] This case is another instance in which his behavior prejudiced Bell and jeopardized her right to a fair trial. This Court cannot overlook the corrosive effect of prosecutorial misconduct on this trial. Bell's sentences are modified to run concurrently.

¶ 7 In closing argument, the prosecutor stated he wanted justice and encouraged jurors to sympathize with the victims' family through expression of his personal opinion. We have held that, while the State may argue inferences from the evidence, the guilt stage of trial is no place for even subtle appeals to sympathy for the victims.[10] We have condemned similar arguments regarding justice and the jury's role in previous cases.[11]

---

**5.** 47 O.S.2001, § 11–903.

**6.** *Breger*, 737 P.2d at 1220; *Atchley v. State*, 1970 OK CR 76, 473 P.2d 286, 290.

**7.** *Breger*, 737 P.2d at 1220.

**8.** *Brewer v. State*, 2006 OK CR 16, 133 P.3d 892, 895; *Spears v. State*, 1995 OK CR 36, 900 P.2d 431, 445.

**9.** *Black v. State*, 2001 OK CR 5, 21 P.3d 1047, 1078; *Malicoat v. State*, 2000 OK CR 1, 992 P.2d 383, 402.

**10.** *Garrison v. State*, 2004 OK CR 35, 103 P.3d 590, 610–11; *Spears*, 900 P.2d at 445.

**11.** In the context of capital cases, we have warned prosecutors not to argue that the only just verdict was the death penalty, that the facts justified only the harshest possible punishment, and that the system, the victims, and justice required the most severe punishment. *Malicoat*, 992 P.2d at 402; *Le v. State*, 1997 OK CR 55, 947 P.2d 535, 555; *McCarty v. State*, 1988 OK CR 271, 765 P.2d 1215, 1220; *Brown v. State*, 1988 OK CR 59, 753 P.2d 908, 913. These improper statements took the form of personal opinion,

¶ 8 The prosecutor also asked most of the family members and law enforcement officers whether Bell had showed any remorse at the scene or at the hospital, and whether she had come up to any family member to ask if everyone was okay. First, whether Bell asked after the family or felt remorse was not relevant to any issue before the jury. Relevant evidence is that which tends to make more or less probable a fact of consequence to the case.[12] An expression of remorse may be relevant in capital cases to show whether a defendant may be a continuing threat to society,[13] but is not relevant even in the second stage of a capital case where the defendant maintains his innocence throughout the trial.[14] Bell consistently stated that she had not seen the obscured stop sign and was not guilty of a crime. Second, in the context of this trial the prosecutor's repeated question was misleading. Several witnesses testified Bell could not get out of her truck herself, sat or lay beside the road before going to the hospital, did not have contact with others on the scene, and was unaware of what had happened until she was told at the hospital. Had there been any remote relevance to this line of questioning, it would still have been improper as asking jurors to draw unwarranted inferences. The evidence showed Bell was unaware there were other victims in the case and unable to approach others at the scene. Bell did not object to this improper questioning and argument, but it was irrelevant and potentially inflammatory, designed to appeal to jurors' emotions.

¶ 9 In examining his own expert witnesses, cross-examining the defense experts, and in argument, the prosecutor consistently elicited testimony that State witnesses were not paid to be in court, had no stake in the outcome, and were not "hired guns". He suggested that State and defense witnesses had differing ethical and moral obligations, and that the defense could hire somebody to say whatever she wanted.[15] This Court has held that prosecutors may comment on the relationship between an expert's fee for services and the truth of his testimony.[16] However, we have never condoned a claim in argument that a defendant attempted to buy his way out of a criminal conviction.[17] The prosecutor emphasized that the defense expert was hired to reach a certain incorrect result, which would result in acquittal. This was improper and prejudicial.

¶ 10 Bell complains of several other improper arguments. The prosecutor suggested over objection in cross-examination that defense counsel had lied to his own expert. He again expressed personal opinion when stating he got frustrated, in his job, "because we've got plea agreements and defense attorneys and different scenarios going on." This, which was followed by an improper plea for justice, was irrelevant. In final closing the prosecutor stated: "I'll tell you what you have in this trial. You have implied promise of honesty. It's there. You know, I don't know how to express it. Sincerity and honesty are something you can't teach. You can't teach it to lawyers, you can't teach it to

and prosecutors here did not, as in some previous cases, mitigate this error. *See Harris v. State,* 2004 OK CR 1, 84 P.3d 731, 753; *Lockett v. State,* 2002 OK CR 30, 53 P.3d 418, 425.

**12.** 12 O.S.2001, § 2401. The State completely fails to explain its assertion that a lack of remorse would show Bell was impaired at the time. It might merely show she was a mean and uncaring person.

**13.** *Harris,* 84 P.3d at 753;

**14.** *Dodd v. State,* 2004 OK CR 31, 100 P.3d 1017, 1044.

**15.** The State suggests this questioning was a response to the defense cross-examination of one State expert's credentials and work habits. This

is not supported by the record. The prosecutor questioned that witness specifically about moral and ethical duties, and the lack of bias on this witness's part as opposed to other, hired, witnesses. This has nothing to do with her credentials or work processes.

**16.** *See Duckett v. State,* 1995 OK CR 61, 919 P.2d 7, 19. We recognize that *Duckett* has no precedential value, but it is persuasive on this issue.

**17.** *See Martinez v. State,* 1999 OK CR 33, 984 P.2d 813, 826 (condemning as "clearly improper" argument that the defendant paid an expert to testify as instructed for the defense). *See also Jones v. State,* 1987 OK CR 103, 738 P.2d 525, 530 (improper for State to argue that defense counsel's job is to get their clients "off", evading conviction).

cops, you can't teach it to each other. You either have it or you don't. And you have my implied—my promise, I come here, and that's what it is." There is simply no excuse for this. The prosecutor is vouching for himself and his case. In making the statement, he turns his "implied" promise into an express promise that he has not lied to the jury. Even had he not just explicitly stated that the defense team had hired experts to reach incorrect conclusions and get an acquittal, this would have been improper. The contrast between the two lines of argument exacerbates the error.

¶ 11 Bell's blood was drawn at the hospital, and the State kept a vial of her blood for defense testing according to statute. State criminalist Heard testified that the state sent a blood sample to University Hospital for testing at Bell's request, and that she did not receive any re-test results. Defense counsel asked if Heard knew whether the sample delivered to University Hospital was not broken. The prosecutor then asked whether blood tested at a hospital might show a higher blood alcohol content than blood tested by the OSBI, and Heard agreed that it might. She also agreed that the defendant was not under the same moral obligation to report a test result to the State. Bell's objection was not sustained. After the State again asked whether Bell ever gave the State results from a re-test, or requested another sample, Bell's objection was sustained. The prosecutor later asked the defense accident reconstruction expert several questions regarding the results of an independent blood test from University Hospital, even though the expert said he hadn't seen any such results and was only hired to look at the State's accident reconstruction evidence. After this, the trial court sustained a motion in limine preventing any further mention of any potential University Hospital test results, noting that the burden was on the State and the defense had

no duty to present test results. The State should not use facts not in evidence.[18] There was no evidence to indicate that Bell had her blood re-tested or what the test results might be, and Bell had no obligation to present that evidence. The prosecutor used this line of questioning to infer that Bell's blood was re-tested and showed a higher concentration of alcohol, and that Bell was hiding this from the jury. The trial court's ruling cured any potential error which might have arisen had the prosecutor used this "evidence" in argument. However, jurors certainly had the opportunity to draw this improper inference, and wonder why Bell didn't present this evidence, from the questions which were allowed. Bell's objections should have been sustained.

¶ 12 We briefly address Bell's remaining propositions of error. In Proposition II Bell claims there was insufficient evidence to convict her of misdemeanor manslaughter. The State had to present evidence that the victims died as a direct result of an act or event which happened while Bell committed the misdemeanor, driving while impaired.[19] To prove Bell was driving while impaired, the State had to show she was driving a motor vehicle on a highway and her ability to drive was impaired by alcohol.[20] In addition to a blood alcohol concentration of .05 to .08 percent, the State must also show that (a) the driver's ability to operate the vehicle was so affected by alcohol that public health and safety was threatened, or (b) the driver violated a state statute or local ordinance in the vehicle's operation.[21] To prove this element, the State alleged that Bell ran a stop sign. Without this element, there is no predicate misdemeanor for the misdemeanor manslaughter charge.[22] Bell claims the State's proof was insufficient because evidence showed the stop sign was obscured. This is a jury question. It is the jury's job to

18. *Malicoat,* 992 P.2d at 402.

19. 21 O.S.2001, § 711; OUJI–CR (2nd) 4–94.

20. A test showing a blood alcohol level of between .05 and .08 is relevant to this element. 47 O.S.2001, § 756(A)(2).

21. 47 O.S.2001, § 756(A)(2).

22. During the course of the trial the prosecutor also argued that Bell was speeding and guilty of inattentive driving. On appeal, the State repeats the suggestion of speeding. As neither of these crimes was charged, and running a stop sign was specifically charged, they would not support the conviction.

weigh the evidence, resolve conflicting evidence, and reconcile conflicting testimony.[23] We accept reasonable inferences and credibility choices which support the jury's verdict.[24] Taking the evidence in the light most favorable to the State, any rational trier of fact could find beyond a reasonable doubt that Bell was driving while impaired, ran a stop sign, and committed misdemeanor manslaughter.[25]

¶ 13 Bell claims in Proposition III that the trial court erred in allowing the prosecutor, over Bell's objection, to use a PowerPoint presentation in his opening statement which included several photographs of the scene and the victims. We have held that prosecutors should not use exhibits in opening statement before they are admitted into evidence.[26] Bell claims that this use of these photographs in opening statement was prejudicial error. She also claims that several of the photographs should not have been admitted. Bell stipulated to the admission of the photographs, and did not object to any of the pictures when they were introduced and admitted at trial. Under these circumstances, any claims that the pictures were improperly admitted, or should not have been used in opening statement, were waived. Bell also objected to the PowerPoint presentation because the prosecutor had affixed captions to the pictures and Bell did not stipulate to the labels, preferring that jurors hear witness testimony concerning the pictures. This objection was well taken. The photographs admitted to the jury did not have captions or written commentary of any kind, but were identified and explained by witnesses. The prosecutor was free to present his theory of the case, and argue his interpretation of the evidence, in opening and closing statements. However, he should not have marked the exhibits with his own comments. Had he done so while seeking to admit the exhibits at trial, it would have rendered them inadmissible. It was no less improper to mark the exhibits which were used in opening statement as if they were trial exhibits. In itself, this error would not require relief. However it contributes to our decision to modify Bell's sentence.

¶ 14 In Proposition V Bell claims that the admission of retrograde extrapolation evidence was error. This evidence was not admitted at Bell's trial and jurors did not have the information which would allow them to perform the equations necessary to get specific blood alcohol levels under that theory. It was not error for the prosecutor to argue that jurors could infer from the evidence, including Bell's own description of her drinking, that she may have had more alcohol in her bloodstream at the time of the accident. Parties may argue reasonable inferences from the evidence.[27] In Proposition VI Bell claims she had ineffective assistance of counsel. We find Bell was not prejudiced by counsel's failure to object to photographs of the victims.[28] We further find that counsel should have objected to the prejudicial questions and argument discussed in Proposition IV, but that no further relief is required. Bell claims in Proposition VII that cumulative error requires relief. We found prosecutorial misconduct in Propositions III and IV requires modification of Bell's sentence. No further relief is necessary.

### Decision

¶ 15 The Judgments of the District Court are **AFFIRMED.** The Sentences in Counts I and II are **MODIFIED** to run concurrently. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2006), the **MANDATE** is OR-

**23.** *Roldan v. State,* 1988 OK CR 219, 762 P.2d 285, 286.

**24.** *Wood v. State,* 2007 OK CR 17, 158 P.3d 467, 472.

**25.** *Dodd,* 100 P.3d at 1041–42.

**26.** *Cheatham v. State,* 1995 OK CR 32, 900 P.2d 414, 424.

**27.** *Brewer,* 133 P.3d at 895.

**28.** *Williams v. Taylor,* 529 U.S. 362, 393, 120 S.Ct. 1495, 1513, 146 L.Ed.2d 389 (2000) (defendant prejudiced where counsel's actions deny him a substantive or procedural right to which he is entitled by law); *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2052, 80 L.Ed.2d 674.

DERED issued upon the delivery and filing of this decision.

LUMPKIN, P.J.: concur in part/dissent in part.

C. JOHNSON, V.P.J. and A. JOHNSON and LEWIS, J.: concur.

LUMPKIN, Presiding Judge: concur in part/dissent in part.

¶1 I concur in the Court's decision to affirm the convictions in this case, however I cannot find a legal basis for modifying the sentences.

¶2 While I agree the prosecutor committed error in the scope of some of his questions and argument, I cannot find it created prejudice in the verdict by the jury. In this case, the jury rendered a sentence recommendation just one year more than the minimum sentence allowed. It is hard to show prejudice in a 5-year sentence when the minimum sentence would be 4 years. In other words, whatever errant actions were committed by the prosecutor had zero impact on the jury. The decision to run the sentences consecutive was made by the trial judge and not the jury. It cannot be remotely argued that the prosecutor's comments had an impact on the trial judge.

¶3 Instead of dealing with the facts of this case, it appears the Court is simply seeking to punish the prosecutor for past and present wrongs. I do not believe we should deprive the citizens of the State of Oklahoma of a valid judgment and sentence in this case due to mere displeasure with the actions of the prosecutor when there is no evidence those actions created prejudice. If an attorney's violation of ethical standards is such that discipline is required, then this Court should refer the matter to the Oklahoma Bar Association to determine what that discipline should be. I would affirm both the judgments and sentences.