Thomas Calvin RITCHIE, Petitioner,

v.

Robert R. RAINES, Warden, Oklahoma State
Penitentiary, Respondent.

No. A–13220.

Court of Criminal Appeals of Oklahoma.

Sept. 12, 1962.

Elmore A. Page, Tulsa, for petitioner.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for respondent.

BUSSEY, Judge.

This is an original proceeding instituted by the petitioner, Thomas Calvin Ritchie, to secure his release from the State Penitentiary at McAlester, Oklahoma, where he is confined by virtue of a judgment and sentence entered against him in the District Court of Tulsa County, wherein he entered a plea of Guilty to a charge of Manslaughter in the Second Degree and was, by the Court, sentenced to serve a term of two years in the State Penitentiary at McAlester, Oklahoma.

From the record, it appears that the defendant was charged by Information with the offense of Manslaughter in the First Degree, said Information providing as follows:

"* * * that Thomas Calvin Ritchie on the 30th day of November, A.D., 1961, in Tulsa County, State of Oklahoma, and within the jurisdiction of

this Court, did unlawfully, wilfully and feloniously, without authority of law, and without a premeditated design upon the part of said defendant to effect the death of Edward Henry, did effect the death of the said Edward Henry, while engaged in the commission of a misdemeanor in manner and form as follows:

"That the said Thomas Calvin Ritchie was then and there driving a 1958 Chevrolet Station Wagon Automobile, bearing a 1961 Oklahoma license number 39–5246, in an easterly direction on East Admiral Place, in the City of Tulsa, Tulsa County, Oklahoma, the same being a public highway, and in the 6100 block on East Admiral Place, at a speed greater than would permit him to bring the said automobile to a stop within the assured clear distance ahead, and at a speed greater than was reasonable and proper having due regard to traffic then and there existing, and while under the influence of intoxicating liquor, and while so driving did then and there run said automobile over and across the body of the said Edward Henry, then and there and thereby inflicting certain mortal wounds upon the body of the said Edward Henry, from which said mortal wounds the said Edward Henry did then and there languish and die."

After petitioner's preliminary motions were overruled, a jury was empanelled and evidence adduced, at which time the parties rested, and the petitioner entered a plea of guilty to the included offense of Manslaughter in the Second Degree. Whereafter no appeal was taken from the judgment and sentence of the court.

The statute under which the charge of Manslaughter in the First Degree was prosecuted is Title 21, § 711, which provides:

"Homicide is manslaughter in the first degree in the following cases:

"1. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor. * * *"

He entered a plea of Guilty to Manslaughter in the Second Degree as defined under Title 21, § 716, which reads as follows:

"Every killing of one human being by the act, procurement or culpable negligence of another, which, under the provisions of this chapter, is not murder, nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree."

On September 1, 1961, and prior to the trial of the petitioner, Title 47, §§ 11–902 and 11–903, enacted by the legislature, became effective. These provide:

"§ 902. (a) It is unlawful and punishable as provided in paragraph (c) of this section for any person who is under the influence of intoxicating liquor to drive, operate, or be in actual physical control of any motor vehicle within this state.

"§ 903. (a) When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide."

In seeking his release from confinement, the petitioner urges (a) that provisions of Title 47, § 11–903 supersedes and repeals the provisions to Title 21, §§ 711 and 716, when death results from the operation of a motor vehicle; and (b) he further urges that under the provisions of Title 47 §§ 11–901 and 11–902, Negligent Homicide is a misdemeanor, and that the district court was without jurisdiction over the subject matter and without authority of law to impose the judgment and sentence entered against petitioner as above set forth.

It is the position of the petitioner that since the provisions relating to reckless driving, operating a motor vehicle under the influence of intoxicants and Negligent

Homicide are contained under Chapter 11, Article IX, Title 47, it was the legislative intent that they be construed together and, that when they are so construed the phrase "in reckless disregard of the safety of others" must, of necessity, include operating a motor vehicle while under the influence of intoxicating liquor.

If we are to adopt the interpretation urged by the petitioner, we must construe the phrase "in reckless disregard of the safety of others" as encompassing all cases arising where a death results from the operation of a motor vehicle, when the driver of said vehicle is in the commission of a misdemeanor, and all other cases wherein the death is the proximate result of a motor vehicle being operated in a grossly negligent manner.

It is the state's position that petitioner's remedy was by appeal, and that since he seeks a review of the court's ruling on preliminary motions, petitioner's questions, herein presented, are not properly before the court and are not reviewable in a habeas corpus proceeding.

The Attorney General, while not abandoning his first proposition, urges that no inconsistency exists between the statutes above referred to, and that under such circumstances there is no repeal by implication as applied to the particular situation here presented. The Attorney General points out that the repealing provision of the Uniform Traffic Code, Title 47, § 11–903 does not expressly repeal any of the provisions of Title 21, Crimes and Punishment. Examination of Title 47 § 11–903 discloses that the Attorney General's assertion is correct.

We will therefore address ourself to the question of whether Title 21 §§ 711 and 716 were repealed in whole or in part by implication, as applied to the particular facts here involved.

In this regard it will be helpful to consider the common law rules of statutory construction which have been adopted by the courts of the various states.

In State v. London, 156 Me. 123, 162 A.2d 150, the Maine Court summarized the common law rules of construction which have been uniformly approved by the appellate courts of this nation. For the purpose of brevity, we quote from the opinion the following rules, omitting the citations of authority.

"The fundamental rule of statutory construction is the legislative intent. (Citations) This rule has been accepted universally and does not need further citation of authority. It applies with equal force to the establishment or denial of a repeal by implication. (Citation)

"It is well settled that a repeal by implication is not favored and will not be upheld in doubtful cases. (Citations) It is, however, equally well established that repeals by implication exists when a later statute covers the whole subject matter of an earlier statute, or when a later statute is repugnant to or inconsistent with an earlier statute. This principle has been expressed in appropriate language in many cases in this state. (Citation)

" 'Repeal by implication exists in two classes of cases: First, when the later statute covers the whole subject-matter of the earlier, especially when additional remedies are imposed; and, second, when the later is repugnant to or inconsistent with the earlier.' (Citation)

" ' * * * to effect a repeal by implication, the later statute must be so broad in its scope and so clear and explicit in its terms as to show that it was intended to cover the whole subject-matter, and displace the prior statute, or the two must be so plainly repugnant and inconsistent that they cannot stand together. (Citations)'. (Citation)

" ' * * * the precedents are numerous in support of a general rule which is applicable when it is claimed

that one statute effects the repeal of another by necessary implication.

" 'The test is whether a subsequent legislative act is so directly and positively repugnant to the former act, that the two cannot consistently stand together. Is the repugnancy so great that the legislative intent to amend or repeal is evident? Can the new law and the old law be each efficacious in its own sphere? (Citations).'

## (CITATIONS)

"The Court will if possible give effect to both statutes and will not presume that a repeal was intended. (Citations)

"Where a later statute does not cover the entire field of the earlier statute but is inconsistent or repugnant to some of its provisions, a repeal by implication takes place to the extent of the conflict.

" 'If a criminal act deals with the same subject as a prior act and is inconsistent with and repugnant to the prior act, the latter will be repealed by implication to the extent of the inconsistency.' (Citation)

" ' Where two legislative acts are repugnant to, or in conflict with, each other, the one last passed, being the latest expression of the legislative will, will, although it contains no repealing clause, govern, control or prevail, so as to supersede and impliedly repeal the earlier act to the extent of the repugnancy.' (Citation)

"Implied amendment or repeal of an earlier by a later statute is founded 'on the reasonable inference that the legislature cannot be supposed to have intended that there should be two distinct enactments embracing the same subject matter in force at the same time, and that the new statute, being the most recent expression of the legislative will, must be deemed a substitute for previous enactments, and the only one which is to be regarded as having the force of law.' (Citation)

"These general rules applicable to all repealing statutes apply as well to penal statutes. 'The repeal of a penal statute by express declaration, or by implication from later legislation does not present any problems which are peculiar to penal statutes alone, but the general rules applicable to all repealing statutes prevail.' (Citation)

"Where a later statute imposes a different penalty, either less or more, for the same or substantially the same offense, the later statute is ordinarily held to repeal the earlier one.

" 'It is a well settled rule that, where a statute prohibits a particular act, and imposes a penalty for doing it and a subsequent statute imposes a different penalty for the same, or practically the same, offense, the later statute repeals the earlier one, and this is true whether the penalty is increased or diminished.' " (Citations)

■ Adopting the well established rule, that legislative acts should be construed as being harmonious, we must, of necessity, determine the legislative intent and place an interpretation upon the statutes consistent with the rules above cited which will not lead to absurd results.

■ There is yet another rule not cited in State v. London, supra, which is of paramount importance in arriving at a decision, and this has been uniformly expressed in the maximum that penal statutes should be strictly construed, and not extended beyond their ordinary or usual meaning.

Applying this rule to the phrase here involved, we believe that the following conclusions are manifestly evident.

The phrase "in reckless disregard of the safety of others" is not broad enough to encompass all violations of the law punishable as misdemeanors. For example, the elements of proof required to convict a person of the offense of operating a motor vehicle while under the influence of intoxicants are (1) that a person is operating a motor vehicle upon a public highway or thoro-

fare and (2) that while so operating the motor vehicle he is under the influence of intoxicants to such an extent that he is "incapable of safely driving a motor vehicle".

To this misdemeanor there need be only two elements added to constitute the offense of manslaughter in the 1st degree; (1) that a person die within a year and one day and, (2) that the death was the direct and proximate result of the operation of a motor vehicle.

It can thus be seen that it is not required that the car be driven with "[a] reckless disregard of the safety of others", but the crime is complete when the elements above set forth are established.

 It therefore follows, that Title 47 § 11–903 does not supersede or repeal by implication the provisions of Title 21 § 711, when the misdemeanor charged—resulting in the death of a person—is operating a motor vehicle while under the influence of intoxicants.

It also follows that since punishment for Manslaughter in the First Degree as set forth under Title 21 § 711 is by imprisonment in the State Penitentiary, the trial court acquired jurisdiction over the subject matter when the information as above set forth was filed in the District Court of Tulsa County.

We must next determine if the court had authority under law to enter the judgment and sentence herein imposed against the petitioner when he entered the plea of guilty to the included offense of Manslaughter in the Second Degree. As an academic question there is considerable merit to the argument presented by the petitioner, and when this question is presented to us properly upon appeal, we will pass upon it.

There is no record before us upon which a review of the evidence could be had. While we might speculate that the death of Edward Henry was the direct and proximate result of the operation of a motor vehicle by defendant with a reckless disregard for the safety of others, such an assumption would be based on speculation.

When an accused charged with Manslaughter in the First Degree, which is based upon an allegation that he was operating a motor vehicle while under the influence of intoxicants, enters a plea of guilty to the included offense of Manslaughter in the Second Degree, such a plea does not admit that the death of the deceased resulted from the operation of a motor vehicle which the defendant was operating while under the influence of intoxicating liquor; but, such plea admits ONLY that the defendant by act, procurement or culpable negligence caused the death of another person.

For the reasons above set forth, we are of the opinion that the Writ prayed for should be, and the same is hereby, Denied.

NIX, P. J., and BRETT, J., concur.