**Johnny Lee McLEOD, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–83–744.**

Court of Criminal Appeals of Oklahoma.

Sept. 22, 1986.

---

1. *But see Hanson v. State*, 716 P.2d 688, 690 (Okl.Cr.1986), (Parks, P.J., Specially concurring).

E. Alvin Schay, Asst. Appellant Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Presiding Judge:

The appellant, Johnny Lee McLeod, was convicted of Manslaughter in the First Degree, in the District Court of Murray County, Case No. CRF–83–4. The jury assessed punishment at four (4) years imprisonment, and the trial judge sentenced the appellant in accordance with the jury's verdict. From this judgment and sentence, the appellant has perfected his appeal. We affirm.

On December 10, 1982, Cheryl Ann Burkey was killed when the pickup truck she was driving was struck head-on by a pickup truck driven by the appellant. The evidence at trial revealed that the appellant had been seen drinking various amounts of beer in a number of bars prior to the accident. Expert testimony indicated that the accident occurred when the vehicle crossed over the centerline into the oncoming traffic lane and collided head-on with the decedent's vehicle. The appellant claimed that the decedent had crossed over to his side of the road first, and that the accident occurred when he initially tried to pull off onto the right shoulder and then veered back to the left in an attempt to avoid the collision. The investigating officer testified that there was no physical evidence indicating that the appellant had tried to take any evasive action. There was also testimony that it had been raining during the evening of the accident.

The investigating officer arrested the appellant and transported him to the hospital for treatment of injuries received in the collision. Appellant had incurred multiple injuries and showed signs of incipient shock.

The officer and attending hospital personnel testified that the appellant had the odor of alcohol on his breath at the time of his treatment. He was therefore advised of his rights and was asked to take a blood alcohol test. The evidence indicates that, despite his injuries, he apparently understood his chemical test rights, was able to calmly and intelligently answer questions, and fully consented to the testing procedure. The test results disclosed a blood alcohol level of at least 0.11 percent. Appellant admitted to drinking four or five beers the night of the accident, but denied that he was intoxicated.

## I.

In his first assignment of error, the appellant contends that the information in this case was jurisdictionally defective because it failed to allege certain essential elements of the crime. Specifically, the appellant argues that the information was deficient in that it failed to allege: (1) that the appellant was incapable of safely driving a motor vehicle; and, (2) that the decedent died within a year and day of the accident. The appellant relies on *Tahsequah v. State*, 602 P.2d 232 (Okl.Cr.1979), and *Ritchie v. Raines*, 374 P.2d 772 (Okl. Cr.1962).

### A.

■ As to the first allegation, the appellant's reliance is misplaced. The inability to safely drive is the definitional standard used by Oklahoma courts to establish the level of intoxication a person must reach in order to qualify as being "under the influence." Intoxication, to the extent that one is unable to safely drive, means the same thing as "under the influence." It is simply an explanatory definition.

It is not necessary, therefore, to allege in the information that the defendant was both "under the influence" and "intoxicated to the extent that he was incapable of safely driving." A valid information need only contain:

A statement of the *acts* constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended.

22 O.S. 1981, § 401(2) (emphasis added). Here, the information alleged that the defendant was driving "under the influence." That allegation was sufficient to enable the appellant to understand the charge against him. *Cf. Nutter v. State*, 658 P.2d 492 (Okl.Cr.1983).

It should be noted that the information in *Ritchie*, one of the cases cited by the appellant, was held to be sufficient even though it did not allege that the defendant was "incapable of safely driving." Similarily, in *Tahsequah*, this Court upheld an equivalent information, ruling that the defendant had been shown to be "under the influence" by evidence which established that he had been drinking, had then driven across the center·line, and had caused a collision.

### B.

▬ Appellant's second allegation is also misinformed. Contrary to the appellant's assertion, the information in this case, as required by *Ritchie*, did properly allege that the death occurred within a year and a day. The information specifically states that the decedent "did then and there languish and die." Obviously, an allegation of immediate death is a sufficient claim of death within a year and a day. No specific form of words is required. *Cf. Starr v. State*, 5 Okl.Cr. 440, 115 P. 356 (1911). Appellant's first assignment of error is, therefore, without merit.

### II.

▬ Appellant's second assignment alleges that the trial court committed error by refusing to sustain appellant's motion to suppress the results of his blood test. Appellant claims that there was insufficient evidence to show that he was aware of what he was doing at the time he consented to the test. Appellant testified that, because of his injuries, he could not remember giving his consent. A review of the record, however, reveals that several State witnesses testified that the appellant was attentive at the time his chemical test rights were explained. The hospital employee who drew the blood testified that the defendant was alert and coherent. Another hospital employee testified that he appeared to be alert and knew what was happening. The arresting officer also testified that the appellant was attentive while his rights were being explained. In *Isom v. State*, 646 P.2d 1288, 1291 (Okl.Cr.1982), the Court stated as follows:

> Both of the arresting officers and the attending nurse testified that the appellant though intoxicated, was alert and understood what was happening around him when he consented to the test. Thus, the trial court was presented with sufficient conflicting evidence to dismiss the appellant's motion to suppress the results of the blood test. The question of suppressing evidence is a judicial question and this Court will not reverse

the trial court upon a question of fact where there is a conflict of evidence, and there is competent evidence reasonably tending to support the judge's findings.

Accordingly, this Court finds there was ample evidence to support the trial judge's decision to overrule the appellant's motion to suppress the results of his blood test. Therefore, this proposition is without merit.

### III.

▬ Appellant asserts that the trial court erred in denying his motion for acquittal, because the State did not produce sufficient evidence to show that he had committed the crime of Manslaughter in the First Degree. In order to sustain a conviction for this crime, it must be shown that the appellant committed the misdemeanor of Operating a Motor Vehicle on a public highway while Under the Influence of an Intoxicating Liquor and that as a result and within a year and a day of that operation a person died.

▬ We first note that when a defendant presents evidence on his own behalf, as in this case, he waives his demurrer to the evidence, and the trial court may consider all the evidence in the case, including the defendant's, in determining whether the evidence was sufficient. *Rudd v. State*, 649 P.2d 791 (Okl.Cr.1982). In determining whether the State has presented sufficient evidence to establish a *prima facia* case, the evidence is viewed in the light most favorable to the State. *Renfro v. State*, 607 P.2d 703 (Okl.Cr.1980).

▬ A review of the evidence presented in this case reveals that the victim was killed when the pickup truck she was driving was struck head-on by a vehicle driven by the appellant. There were no skid marks on the road indicating that any brakes were applied. Contrary to his testimony, the shoulder on the appellant's side of the road was wide enough for him to have pulled off safely. There was no evidence that he attempted to pull off the road to avoid the accident. There was testimony that appellant had been drinking earlier that evening. Four of the State's witness-

es testified they detected the odor of alcohol on appellant's breath after the accident, and the chemical tests of the appellant's blood indicated a blood alcohol content of at least 0.11 percent. It is clear that the State established a *prima facia* case that the deceased was killed as a direct and proximate result of the operation of a motor vehicle by the appellant, while he was under the influence of alcohol. A rational trier of fact could easily find the existence of the essential elements of this crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We therefore determine this proposition to be without merit.

### IV.

In his fourth assignment of error, the appellant alleges that the prosecuting attorney committed reversible error by making improper prosecutorial comments. In one instance, the prosecutor argued that there was no telling how high the appellant's blood alcohol level had been before he was tested. The appellant objected and the jury was admonished to disregard the statement. An admonishment will cure any error which does not substantially affect the verdict. *Kitchens v. State*, 513 P.2d 1300 (Okl.Cr.1973). Under the circumstances, the prosecutor's comment, while improper, was not so prejudicial that it could not be cured by admonition.

Appellant failed to object to the other two instances of improper argument. Failure to object waives all but fundamental error. *Parks v. State*, 651 P.2d 686 (Okl.Cr.1982). In both of the other instances, the prosecutor obliquely indicated to the jury that the element of "under the influence" could be presumed from the test of the appellant's blood alcohol level. A similar instruction by the trial court would have been reversible error. *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). In this case, however, the prosecutor's comments were so disorganized that they were hard to understand and it would be difficult to say they influenced the jury's deliberations. In addition, the trial judge clearly and correctly instructed the jury as to the law on this element. It therefore appears, that when taken in context, that the prosecutor's comments were not so prominent or prejudicial as to undermine this Court's confidence in the jury's verdict. Accordingly, we find this allegation to be without merit.

### V.

Next, the appellant alleges that the trial court erred by refusing to give his requested instruction, stating that the jury should not consider the results of the blood alcohol test, unless it was shown to have been administered in accordance with the rules and regulations of the Board of Tests for Alcohol and Drug Influence. *See* 47 O.S. 1981, § 759. Again, we disagree.

Preliminary questions concerning the admissibility of evidence are to be determined by the trial court. 12 O.S. 1981, § 2105(A). This Court has specifically held that questions concerning the manner in which a blood sample has been taken are to be answered by the trial judge prior to admitting the test into evidence. *Weatherford v. State*, 549 P.2d 1221 (Okl.Cr.1976).

Since the legality of the manner in which the blood test was administered is not a question for the jury, the appellant was not entitled to his requested instruction. Therefore, this assignment of error is without merit.

### VI.

In his sixth assignment of error, the appellant alleges the trial court committed error by refusing to grant a motion for mistrial after the prosecutor mistakenly read the original information, instead of an amended information, to the jury. We note that the trial judge admonished the jury to disregard the allegations of the first information, and thereafter, the prosecutor submitted the proper amended information for their consideration. It should also be noted that the only difference between the two informations is that the original information contained a speeding allegation which

was removed by the amendment. The trial judge further admonished the jury that the reading of the information was nothing but a method of accusing the defendant of a crime, that the information was not evidence, and that the jury should not be influenced against the defendant because of the filing of the information.

This Court has long held that error or improprieties which may occur in the reading of the information are not reversible error when such errors do not prejudice the defendant to any significant degree. *See Perez v. State*, 614 P.2d 1112 (Okl.Cr.1980). *See also Tice v. State*, 283 P.2d 872 (Okl. Cr.1955); and *Armstrong v. State*, 61 Okl.Cr. 352, 68 P.2d 114 (1937). It is clear the appellant was not prejudiced in any way by the improper reading of the original information. The sentence imposed was the minimum that could be imposed for first degree manslaughter. This Court will look at a lenient sentence and consider it as strong evidence that the jury was not prejudiced against the defendant. *McKee v. State*, 576 P.2d 302 (Okl.Cr.1978). Therefore, we find this proposition to be without merit.

## VII.

Finally, the appellant alleges that the accumulation of errors in this case justifies a reversal or modification. We have previously determined that the prosecutor made certain erroneous comments and improperly read the wrong information to the jury. *Supra* at 881. In our opinion, however, the cumulative effect of these errors is not sufficient to undermine this Court's confidence in the accuracy of the jury's verdict. We, therefore, find this proposition to be without merit.

Accordingly, for the foregoing reasons, the judgment and sentence of the trial court is AFFIRMED.

BRETT, J., concurs.

BUSSEY, J., concurs in results.