2005 OK CR 13

**Gary Hartwell BARNARD, Appellant**

v.

**STATE of Oklahoma, Appellee.**

**No. F–2004–126.**

Court of Criminal Appeals of Oklahoma.

Aug. 16, 2005.

**51.** Title 16 O.S.2001 § 11, see note 9, supra.

William D. Smith, Hoffman & Smith, Oklahoma City, OK, attorney for defendant at trial.

Bret T. Burns, Assistant District Attorney, Chickasha, OK, attorney for the State at trial.

Cindy Brown Danner, Appellate Defense Counsel, Norman, OK, attorney for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Theodore M. Peeper, Assistant Attorney General, Oklahoma City, OK, attorneys for appellee on appeal.

## OPINION

CHAPEL, Presiding Judge.

¶1 Gary Hartwell Barnard was tried by jury and convicted of one count of Escape from County Jail, under 21 O.S.2001, § 443(A), After Former Conviction of Two or More Felonies, in Grady County, Case No. CF–2003–275. In accordance with the jury's recommendation, the Honorable Richard Van Dyck sentenced Barnard to imprisonment for thirty (30) years. Barnard appeals his conviction and his sentence.

### Facts

¶2 On August 20, 2003, Gary Barnard was serving time in the Grady County Jail pursuant to a court order, for failing to pay warrants arising out of two cases in which he had been convicted of misdemeanors.[1] His incarceration had begun on July 8, 2003, when Special Judge Timothy Brauer determined that Barnard had failed to pay in accordance with a prior Rule 8 Order and ordered that he be incarcerated until he paid at least $522.00.[2] On that August day, Barnard, who was a trusty, was participating in a work release program at the Grady County Fairgrounds, under the supervision of Albert Hooper, a Fair Board member and reserve deputy.

¶3 At some point during that afternoon, Barnard and another inmate, Timothy Thompson, walked off their job site, found clothing to change into, and left the fairgrounds. They were not being directly supervised, and their absence was not noticed until that evening, after Hooper had returned the other ten inmates who were working that day to the Grady County Jail.[3]

1. The first case, CF–97–237, originally charged a felony failure to return rental property, but eventually resulted in a misdemeanor petit larceny conviction. The second case, CM–99–807, involved a conviction for misdemeanor DUI.

2. See 22 O.S.2001, § 983; Section VIII, Rules 8.1–8.8, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2003). The July 8, 2003, court minute—signed by both the judge and Barnard—notes that Barnard owed a total of $9,448.18 in the two cases and that he could be

released from custody upon payment of $522.00. Barnard would then have been expected to continue making payments according to the previous court-ordered schedule. Hence Barnard's custody was akin to being detained for indirect contempt of court.

3. Hooper testified that he picked up twelve inmates to work for him that day, that he saw all of them at 11:30 a.m., and that he did not do a head count when he loaded them back into the van at the end of the day. When he asked if everyone

¶ 4 Barnard and Thompson were apprehended around 3:30 p.m. the next day, by officers from the Metro Fugitive Task Force, at a home in Oklahoma City. In an interview after Barnard was taken into custody, he indicated that he left the fairgrounds because his girlfriend had recently been forced to give someone oral sex, which he considered rape, and that he intended to go "settle the score."

## ANALYSIS

▇ ¶ 5 In Proposition I, Barnard argues that the escape statute under which he was charged and convicted cannot be applied to his escape from county jail. Barnard was charged and convicted of escaping from county jail under 21 O.S.2001, § 443(A). The statute provides:

> Any person having been imprisoned in a county or city jail or detained in a juvenile detention facility awaiting charges on a felony offense or prisoner awaiting trial or having been sentenced on a felony charge to the custody of the Department of Corrections who escapes from a juvenile detention facility while actually confined therein or escapes from a county or city jail, either while actually confined therein, while permitted to be at large as a trusty, or while awaiting transportation to a Department of Corrections facility for execution of sentence, shall be guilty of a felony punishable by imprisonment of not less

than one (1) year nor more than seven (7) years.

Barnard, who has never disputed the basic facts of his escape, argues that this statute cannot be applied to his case, because the reason for his incarceration—failing to pay court-ordered costs in connection with misdemeanor convictions—is not covered by the specific and limited language of this provision. Barnard properly preserved this claim at trial.

¶ 6 In *McBrain v. State*,[4] this Court addressed the extent of § 443(A).[5] The question at issue in that case was whether this provision applied to a prisoner awaiting trial on a misdemeanor, or only a prisoner awaiting trial on a felony.[6] This Court accepted the State's argument, which was based on the specific language of § 443(A), that this provision applies to escapes by persons in three basic situations: (1) a person "imprisoned in a county or city jail awaiting charges on a felony offense"; (2) a "prisoner awaiting trial"; and (3) a "prisoner having been sentenced on a felony charge to confinement with the Department of Corrections."[7] Our current Uniform Jury Instruction for § 443(A) likewise reflects this same three-part structure.[8]

▇ ¶ 7 We begin our analysis by noting, as we did in *McBrain*, that "[w]here the language of a statute is plain and unambigu-

---

was there, another inmate indicated, "yes, everybody is here," and Hooper returned the others to jail.

4. 1988 OK CR 261, 764 P.2d 905.

5. Although § 443(A) has been amended since this Court's decision in *McBrain*, the amendments simply added (1) the references to juvenile detention facilities, and (2) the language noting that such an escape would be a felony. *Compare* 21 O.S.1981, § 443(A) *with* 21 O.S.2001, § 443(A). The amendments did not otherwise change the structure or scope of § 443(A).

6. The defendant in *McBrain* had been awaiting trial on both felony charges and a misdemeanor charge at the time of his escape, but he maintained that the jury should not have been informed about the misdemeanor charge, since § 443(A) only applied to escapes by someone

awaiting trial on one or more felony charges. *See* 1988 OK CR 261, ¶¶ 9–10, 764 P.2d at 907–08.

7. *Id.* at ¶¶ 10–11, 764 P.2d at 908. This Court notes that the subsequent amendments to the statute expand each of these situations to include persons detained in juvenile detention facilities. The Court acknowledges that the addition of the language relating to juvenile detention facilities, without the addition of commas or other helpful punctuation, has served to make a statute that was already difficult to read even more obtuse. Nevertheless, the basic three-part structure of § 443(A) remains discernible.

8. *See* Instruction No. 6–53, OUJI–CR (2d) (Supp. 2000). In the instruction for § 443(A), the third element is that the prisoner or person detained in a juvenile detention facility be "(awaiting charges for a felony offense)/(awaiting trial)/(hav-

ous and the meaning clear and unmistakable, there is no room for construction, and no justification exists for interpretative devices to fabricate a different meaning."[9] In *McBrain*, we concluded, based upon the specific language of § 443(A), that this provision applies to prisoners awaiting trial on either felony or misdemeanor charges.[10] This same kind of statutory analysis now leads us to conclude that Barnard's escape from county jail, where he was being held for failure to pay costs in connection with two previous misdemeanor convictions, simply does not fall within the scope of 21 O.S.2001, § 443(A).

¶ 8 Although Barnard was certainly imprisoned in a county jail, he was not awaiting charges on a felony offense; he was not awaiting trial; nor had he been sentenced to the Department of Corrections for a felony offense.[11] Consequently, under the plain meaning of § 443(A), Barnard's conviction for this offense simply cannot stand.

■ ¶ 9 The State acknowledges that *McBrain* is the controlling case in the current appeal, but argues that *McBrain* should be interpreted as holding that § 443(A) applies to prisoners being "held on" misdemeanors, which (the State argues) includes Barnard. Such an approach is inconsistent with both *McBrain* and the language of § 443(A) upon which that decision rested. The State also argues that finding that § 443(A) does not cover Barnard's escape leads to an "unjust result," which should be avoided. While avoiding an unjust result can be a consideration in situations of statutory vagueness,[12] this Court has no authority to contort a criminal statute to apply beyond the scope of its own narrow and specific language, in the interest of avoiding a seemingly "unjust result."[13] While it may make sense, from a policy perspective, that our escape statutes apply to an escape by *anyone* who has been lawfully detained, regardless of the reason for the detention, it is not the role of this Court to adopt such policies. Section 443(A) certainly could have been drafted in such a manner.[14] Yet it was not. Hence the scope of this provision must be interpreted in accord with its own limited language.

¶ 10 The State also points out that our *McBrain* opinion found it "implausible" that someone who escaped from jail while awaiting trial on a misdemeanor would not be guilty of any crime.[15] The State finds it equally implausible, as will many who read this opinion, that one who escapes from jail while being detained pursuant to a Rule 8 court order would not be guilty of some kind

ing been sentenced on a felony charge to the Department of Corrections)." *Id.*

9.  *See McBrain*, 1988 OK CR 261, ¶ 11, 764 P.2d at 908 (citation omitted).

10.  We noted that the Legislature specifically used the word "felony" in defining the first and third situations, but omitted this limiting word from the second clause. We concluded, "Its omittance from the second clause surely indicates the legislature's intent for the clause to apply to both felony and misdemeanor charges." *Id.*

11.  It should be noted that Barnard's presence outside the actual confines of the county jail at the time he escaped is *not* the reason § 443(A) does not apply here, since this provision does apply to escapes by prisoners "while permitted to be at large as a trusty." *See* 21 O.S.2001, § 443(A); *see also McCoy v. State*, 1975 OK CR 117, ¶ 10, 536 P.2d 1309, 1312–13 (per curiam) (§ 443 applies to escape from lawful custody that occurs outside confines of a penal institution).

12.  *See, e.g., Delfrate v. State*, 1987 OK CR 20, ¶ 7, 732 P.2d 900, 902 (interpreting § 443 so as to avoid manifestly unjust sentencing enhancement

for defendant) (superseded by subsequent statutory amendment to § 443).

13.  Indeed, to do so would itself create an unjust result.

14.  The language of other "nearby" escape provisions demonstrates our Legislature's ability to speak broadly when it wishes a statute to be applied broadly. *See, e.g.*, 21 O.S.2001, § 438 (punishment for person facilitating prison escape by another—by sending or carrying something into prison—depends upon whether prisoner was (a) "confined upon any charge or conviction of felony," or (b) "confined otherwise than upon a charge or conviction of felony"); 21 O.S.2001, § 441 ("Every person who willfully assists any prisoner in escaping or attempting to escape from the custody of any officer or person having the lawful charge of such prisoner under any process of law or under any lawful arrest, is guilty of a misdemeanor.").

15.  1988 OK CR 261, ¶ 11, 764 P.2d at 908. Nevertheless, the holding of *McBrain* was based upon the statutory language at issue, not the implausibility of a non-criminal escape. *Id.*

of criminal escape under Oklahoma law. Yet our current statutory scheme does appear to have just such a gap. Beyond § 443(A), the only other potentially appropriate escape offense put forward by the State is for the misdemeanor offense of "breaking jail," under 57 O.S.2001, § 56. Barnard's jury was instructed upon this crime as a lesser offense. Nevertheless, because this crime is itself limited to an escape by someone who is either (a) "imprisoned pursuant to a sentence of imprisonment," or (b) "committed to a county or city jail for the purpose of detaining him for trial," this provision does not cover Barnard's escape either.[16] Hence Barnard's conviction must be reversed entirely.[17]

¶ 11 In the interest of candor, this Court acknowledges that it may have played a role in creating the current statutory gap. In 1981, in *Smith v. State*,[18] this Court found that the same § 443 language now at issue "necessarily repealed by implication" a prior escape statute, namely, 21 O.S.1971, § 435. This prior statute applied to "[e]very prisoner confined in any other than the penitentiary, who by force or fraud escapes therefrom," with a penalty of up to two years in the penitentiary.[19] Despite the much broader language of § 435, this Court came to the surprising conclusion, in *Smith*, that "a thorough examination of the two statutes before us reveals that the subject matter of the crime in each statute is identical, with § 443 covering the whole subject matter of § 435, but with different penalties imposed."[20] Hence we concluded that § 443 effectively repealed "by implication" § 435. Two years later, our Legislature repealed the former § 435. This Court now recognizes that *Smith* was wrongly decided. Section 443 did not then and does not now cover the whole subject matter of the former § 435.[21] And our decision in *Smith* is hereby overruled in this regard.[22]

¶ 12 In Proposition II, Barnard argues that the trial court erred in altering our Uniform Criminal Jury Instruction No. 6–53, to allow for an escape conviction under § 443(A) by someone who was "being held on a court order for failing to pay or appear."[23] The trial transcripts reveal that the trial court struggled to formulate this instruction—with good reason. As this Court found in Proposition I, the circumstances of Barnard's escape simply do not fit within the language of § 443(A). Hence it was error to alter the uniform jury instruction in this manner, so as to allow Barnard to be convicted under this provision.[24] The altered instruction does *not* fairly and accurately state the law; and the use of this modified instruction violated Barnard's right to due process, by allowing his jury to convict him of a "crime" contrary to the statutory definition of that crime.[25] For this reason too Barnard's conviction must be reversed.

¶ 13 Barnard's further claims on appeal, in Propositions III, IV, V, VI, and VII, are all rendered moot by this Court's reversal of his escape conviction. They need not be further addressed.

---

**16.** *See* 57 O.S.2001, § 56.

**17.** The Court notes that, depending on the facts, it might have been possible to charge Barnard with assisting his cohort, Timothy Thompson, to escape, under 21 O.S.2001, § 437.

**18.** 1981 OK CR 41, 626 P.2d 1357.

**19.** *See* 21 O.S.1971, § 435 (repealed, effective November 1, 1983).

**20.** 1981 OK CR 41, ¶ 6, 626 P.2d at 1359.

**21.** Barnard's escape would have been covered under the former § 435. *See Hood v. State*, 1964 OK CR 86, ¶ 9, 395 P.2d 348, 349–50 (finding that former § 435 applied to person who escaped from city jail, where he was being held for non-payment of fines on prior convictions).

**22.** This ruling cannot, of course, resurrect the former § 435 or expand the application of our current § 443. Only direct action by the Legislature can do that.

**23.** The trial court substituted this quoted language for the third element of the uniform instruction, quoted *supra* in note 8. *See* Instruction No. 6–53, OUJI–CR (2d) (Supp.2000).

**24.** *See Atterberry v. State*, 1986 OK CR 186, 731 P.2d 420 (conviction reversed where trial court improperly expanded scope of child abuse statute through inaccurate jury instruction).

**25.** *See Fontenot v. State*, 1994 OK CR 42, ¶ 55, 881 P.2d 69, 84–85.

¶ 14 After thoroughly considering the entire record before us on appeal, including the original record, transcripts, briefs, and exhibits of the parties, we find that Barnard's conviction for Escape from County Jail, After Former Conviction of Two or More Felonies, must be reversed.

## Decision

¶ 15 Barnard's conviction for ESCAPE FROM COUNTY JAIL, AFTER FORMER CONVICTION OF TWO OF MORE FELONIES, is hereby **REVERSED** and this case is hereby **REMANDED** to the district court, where it shall be **DISMISSED**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18 App. (2005), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, J. and A. JOHNSON, J., concur.

LUMPKIN, V.P.J., dissent.

LUMPKIN, Vice–Presiding Judge, Dissents.

¶ 1 The opinion states the correct analysis to be applied in statutory construction, i.e. "[w]here the language of a statute is plain and unambiguous and the meaning clear and unmistakable, there is no room for construction, and no justification exists for interpretative devices to fabricate a different meaning", *McBrain v. State,* 1988 OK CR 261, ¶ 11, 764 P.2d 905, 908. However, it then proceeds to disregard that standard and the Oklahoma Legislature's response to our decision in *McBrain.*

¶ 2 Following *McBrain* the provisions of the statute, now 21 O.S.2001, § 443(A), were amended to provide the statutory language we are asked to apply to the facts in this particular case. The statutory language that was applicable in *McBrain* actually stated "Any person having been imprisoned in a county or city jail awaiting charges on a **felony** offense ...". And, the Legislature's following amendment of that provision is a clear indication of their present intent regarding its application. As I read the opinion it appears the Court is inserting words into the statute that were not enacted by the Legislature and are done so to change the meaning of the statute to achieve the desired result based on the unique facts of this case. In fact, the word "felony" the Court is trying to reinsert was intentionally removed by the Legislature as it applies to this particular defendant.

¶ 3 As I read the "plain" language there are three classes of individuals subject to the penal provisions of this statute, i.e. Any person (1) having been imprisoned in a county or city jail, or (2) detained in a juvenile detention facility awaiting charges on a felony offense, or (3) prisoner awaiting trial or having been sentenced on a felony charge to the custody of the Department of Corrections. What the Court is seeking to do is insert into the statute the prerequisite qualifier of "felony" into the first category of individuals when it does not exist in the statute. The Legislature revealed its legislative intent as to the second and third categories by purposefully making "awaiting charges on a felony offense" in the second category and "awaiting trial or having been sentenced on a felony charge to the custody of the Department of Corrections" in the third category a qualifier for those classes of offenders. But, the Legislature did not make "felony" a qualifier to those individuals "imprisoned in a county or city jail" in the first category. Those categories must be read in the disjunctive as the Legislature enacted them by the placement of the "or" between the classes of offenders and the specific insertion of "felony" where it was to apply to that class of offender. There is nothing to surmise or discern as to intent in this statute because it is clear and unambiguous when the plain language is read in appropriate context.

¶ 4 Now, is it harsh for an individual who has been imprisoned for failure to pay fines and costs in a misdemeanor case to be convicted of a felony for escaping from the county jail? Maybe so, maybe not, but that is not the issue before this Court. The sole issue is the application of the language of the lawfully enacted statute by the Oklahoma Legislature. If application of their public policy is deemed too harsh, the proper procedure is to go back to the governmental body that enacts public policy, the Legislature, and have

it changed. We do not attempt to rewrite the statute to deal with what members of the Court deem to be a harsh treatment in a particular case.

¶ 5 In addition, the Court does not even discuss the provisions of 21 O.S.2001, § 444(B) which states "Any person who escapes or attempts to escape after being lawfully arrested or detained for custody for a misdemeanor offense shall be guilty of a misdemeanor". Regardless, the Court's *mea culpa* regarding creating past problems by its errant language in the *Smith* decision should be taken to heart as it seeks to rewrite the plain language of this statute and disregard what the history of the evolution of this statutory language reveals is clear Legislative intent to include this class of offender within the application of this escape statute. For these reasons I must dissent. Hopefully, the Oklahoma Legislature will once again address this issue and use clear enough language to require this Court to adhere to the Legislative intent.