Donn Baker, attorney at law, Talequah, OK, attorney for defendant at trial.

Larry Moore, Assistant District Attorney, Muskogee, OK, attorney for the State at trial.

Daniel Medlock, Assistant District Attorney, Muskogee, OK, attorney for appellant on appeal.

Donn Baker, attorney at law, Talequah, OK, attorney for appellee on appeal.

**OPINION**

C. JOHNSON, Judge.

¶ 1 The Appellee, Billy Edward Haworth, was charged by Information in Muskogee County District Court, Case No. CF–2010–1250, with First Degree Manslaughter in the Commission of a Misdemeanor (21 O.S.2001, § 711(1)). On the day of preliminary hearing, April 21, 2011, Haworth filed a demurrer to the Information and motion to quash. The magistrate denied the motion, and Haworth was bound over for trial as charged. On June 10, 2011, Haworth filed a supplement to his demurrer and motion to quash. A hearing on the motion was held August 3, 2011, before the Honorable Jeffrey Payton, District Judge. The court took the matter under advisement, and by written order issued August 16, 2011, sustained the motion to quash. The State filed notice of intent to appeal August 19, 2011, and timely filed its Petition in Error in this Court on October 11, 2011. The State's appeal is brought under 22 O.S.2011, § 1053(4), from a district court's grant of a motion to quash for insufficient evidence in a felony case.

¶ 2 In its sole proposition of error, the State claims the district court abused its discretion in granting the defendant's motion to quash for insufficient evidence. We review the district court's ruling to determine if it was clearly erroneous. *State v. Heath*, 2011 OK CR 5, ¶ 9, 246 P.3d 723, 725. Appellee was charged with First Degree Manslaughter in connection with a traffic accident in Muskogee County on December 15, 2010. For purposes of this appeal, it is not disputed that a vehicle driven by Appellee collided with an oncoming vehicle on a state highway, while Appellee was attempting to pass other vehicles in a marked no-passing zone. One person died in the crash.

¶ 3 Oklahoma's First Degree Manslaughter statute has been unchanged since before statehood. It punishes, among other things, any homicide "perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor." 21 O.S. 2001, § 711(1); *Jewell v. Territory*, 4 Okla. 53, ¶ 6, 43 P. 1075, 1077 (1896). The Negligent Homicide statute, enacted in 1961, punishes the death of any person which is "a proximate result of injury received by the driving of any vehicle by any person in reckless disregard of the safety of others," when the death occurs within one year of the injury. 47 O.S. Supp.2005, § 11–903.[1]

¶ 4 First Degree Manslaughter is a felony with a punishment range of four years to life imprisonment. Negligent Homicide is a misdemeanor with a punishment range of not more than one year in the county jail. In this case, the misdemeanor alleged as the predicate for manslaughter is Passing in a No–Passing Zone (47 O.S.2001, § 11–307; 47 O.S. Supp.2007, § 17–101). Appellee claims the only appropriate charge for a motor-vehicle fatality under these circumstances is Negligent Homicide. He argues that because this latter statute was enacted more recently than the Manslaughter statute, and because it is more specifically aimed at traffic-related deaths, it must have been intended to supersede or partially repeal the First Degree Manslaughter statute in circumstances such as these. Appellee points to

1. Because the homicide at issue in this case occurred in December 2010, we cite to the versions of the applicable statutes in existence at that time.

our decision in *Short v. State*, 1977 OK CR 44, 560 P.2d 219, as authority for this contention. The State, however, maintains that the First Degree Manslaughter statute means what it says—homicide in the commission of any misdemeanor—and that it is a question of fact for a jury to determine whether the misdemeanor was causally related to the death. In support of its claim, the State relies on our recent decision in *State v. Ceasar*, 2010 OK CR 15, 237 P.3d 792.

¶ 5 Over the 50–year history of the Negligent Homicide statute, this Court has grappled with its proper application many times. The statute is aimed at a limited class of homicides: those committed by a motor-vehicle driver acting in "reckless disregard of the safety of others." Does this statute preclude application of other homicide statutes in our law, and if so, under what circumstances? Was the Negligent Homicide statute intended to restrict prosecutor discretion in selecting what charges to bring?

¶ 6 Scarcely a year after enactment of the Negligent Homicide statute, in *Ritchie v. Raines*, 1962 OK CR 101, 374 P.2d 772, we held that the new law did not prevent the State from seeking a First Degree Manslaughter conviction against the petitioner, who had been charged with manslaughter in the commission of several vehicle-related offenses, including driving under the influence of intoxicants. We reasoned that a manslaughter charge was appropriate because "driving under the influence of intoxicants" did not necessarily require the State to prove any "reckless disregard" on the motorists part.[2] *Id.*, 1962 OK CR 101, ¶¶ 18–21, 374 P.2d at 776–77. We have recognized this exception ever since. *See e.g. White v. State*, 1971 OK CR 141, ¶ 11, 483 P.2d 751, 753; *Lomahaitewa v. State*, 1978 OK CR 67, ¶ 4, 581 P.2d 43, 44. Eventually, we extended the holding in *Ritchie* to another misdemeanor involving alcohol and motor vehicles: Driving While Impaired. *Bell v. State*, 2007 OK CR 43, ¶¶ 2–5, 172 P.3d 622, 623–24

(overruling *State v. Breger*, 1987 OK CR 98, 737 P.2d 1219).

¶ 7 In cases of motor-vehicle fatality that lack evidence of driver intoxication, the analysis has been more problematic. In *Atchley v. State*, 1970 OK CR 76, ¶ 11, 473 P.2d 286, 290, we held that due to the similarities between the crimes of Negligent Homicide and Second Degree Manslaughter, 22 O.S. § 716, the former statute (having been more recently enacted) superseded the latter in cases where the death was allegedly caused by "the criminal negligence of another by the driving of an automobile." Underlying this result was the assumption that the Legislature could not have intended a particular course of conduct to be punishable under more than one statute.

¶ 8 In *Hopkins v. State*, 1973 OK CR 40, 506 P.2d 580, the defendant was tried for First Degree Misdemeanor Manslaughter after a fatal collision. Evidence suggested the defendant was speeding at the time of the crash; and while cans of beer were found in his vehicle, there was apparently no basis for concluding that he was intoxicated when the accident occurred. The defendant was ultimately convicted of Negligent Homicide as a lesser offense. On appeal, the defendant in *Hopkins* complained that the trial court should have sustained his demurrer to the manslaughter charge. In reviewing the history of our dealings with the Negligent Homicide law, we observed that while Driving Under the Influence of Intoxicants was one example of a misdemeanor offense that could serve as a predicate for a First Degree Misdemeanor Manslaughter charge (a conclusion first reached in *Ritchie* ), it was not the only one. *Hopkins*, 1973 OK CR 40, ¶ 6, 506 P.2d at 582–83. Because the defendant in *Hopkins* was ultimately convicted of Negligent Homicide as a lesser related offense, we had no occasion to determine whether his conduct would have supported a conviction for First Degree Manslaughter. But we found no statutory impediment to such a charge.[3]

---

**2.** The petitioner in *Ritchie* ultimately pled guilty to Second Degree Manslaughter, but sought *habeas corpus* relief from this Court.

**3.** The only question remaining before this Court in *Hopkins* was whether Negligent Homicide could be a lesser included offense to a charge of First Degree Misdemeanor Manslaughter. We

¶ 9 A few years later, in *Short v. State,* 1977 OK CR 44, 560 P.2d 219, the defendant was charged with First Degree Manslaughter in the commission of "Reckless Driving," a traffic-related misdemeanor that includes, but is not limited to, speeding (47 O.S. § 11–901).[4] The defendant in *Short,* being pursued by police, was driving at speeds in excess of 100 miles per hour when he was involved in a fatal collision. The charge of "Reckless Driving" was predicated on the defendant's excessive speed. The question avoided in *Hopkins* was thus squarely before the Court. This Court noted that the Negligent Homicide statute is of more recent vintage than the manslaughter statutes, and is specifically directed at vehicular homicides. We interpreted the statutory definition of "Reckless Driving" to reflect same degree of culpability described in the Negligent Homicide statute. We concluded that allowing a First Degree Manslaughter charge for a death caused by, as we put it, "merely speeding" would leave little substance to the Negligent Homicide statute. *Short,* 1977 OK CR 44, ¶ 7, 560 P.2d at 221.

¶ 10 Ten years later, this Court limited the holding in *Short.* In *A.L.G. v. State,* 1987 OK CR 69, 736 P.2d 521, the defendant, being pursued by police for an outstanding warrant, drove at high speeds through a residential area and hit another vehicle, killing one of its occupants. He was charged with, and convicted of, First Degree Misdemeanor Manslaughter in the commission of Escape and Eluding an Officer. On appeal, he argued that *Short* precluded a charge of Misdemeanor Manslaughter, because his conduct fit within the kind of "reckless disregard" addressed in the Negligent Homicide statute. In rejecting this claim and affirming the conviction, we distinguished the holding in *Short*—not so much on its basic facts (which were quite similar), but on the particular charges brought and the legal elements to be proven:

> To fall within the rule announced in *Short,* those two charges [Escape and Eluding an

Officer] must be synonymous with "reckless disregard of the safety of others." A comparison of the applicable statutes clearly reveals that the elements of the offenses are not the same.

*A.L.G.,* 1987 OK CR 69, ¶ 3, 736 P.2d at 522.

■ ¶ 11 Recently, in *State v. Ceasar,* 2010 OK CR 15, 237 P.3d 792, the defendant was involved in a fatal motor vehicle accident while driving with a suspended license. We concluded that because the defendant had no legal right to be behind the wheel at the time, his act of driving without a license was causally related to the death, sufficient to support a charge of First Degree Misdemeanor Manslaughter. *Id.* at ¶¶ 10–13, 237 P.3d at 794–95. The focus in *Ceasar* was on causation—a causal connection between the defendant's conduct and the death—which is an essential requirement of all homicides. But in reaching our conclusion, we observed that the First Degree Manslaughter statute places no express limitations on what kind of misdemeanors could serve as a predicate for Misdemeanor Manslaughter. *Id.* at ¶ 10, 237 P.3d at 794.

■ ¶ 12 In attempting to sort out the interplay between statutes, a few cardinal rules come to mind. It is the task of this Court to interpret laws, not revise them. The ultimate goal of statutory construction is to ascertain the intention of the Legislature. To reach that goal, this Court may look to each part of the statute in question, to other statutes on the same or related subjects, to the evils and mischiefs to be remedied by these provisions, and to the natural or absurd consequences of any particular interpretation. *Lozoya v. State,* 1996 OK CR 55, ¶ 20, 932 P.2d 22, 29; *Landrum v. State,* 96 Okl. Cr. 356, 255 P.2d 525, 529 (1953). Questions may arise when two statutes, however plainly worded, appear to cover the same or similar conduct. But there simply is no rule of statutory construction requiring that a particular pattern of criminal conduct shall only

---

held that it could. *Hopkins,* 1973 OK CR 40, ¶¶ 7–11, 506 P.2d at 583–84.

4. "Reckless driving" is defined as follows: "It shall be deemed reckless driving for any person to drive a motor vehicle in a careless or wanton

manner without regard for the safety of persons or property or in violation of the conditions outlined in Section 11–801 of this title [*i.e.* speeding]." 47 O.S.2001, § 11–901.

be addressed by one particular criminal provision. The Legislature has the authority to grant prosecutors discretion in what charges to bring, based on the circumstances of the case. Failing to recognize this can lead to absurd results. The defendant's conduct in *Short* was no less dangerous to human life than the defendant's conduct in ALG.; both were driving at very dangerous speeds at the time of the homicides. Yet they faced drastically different punishments—and only because of the prosecutor's inability or neglect, in *Short,* to pick the "right" kind of misdemeanor as the predicate for a Misdemeanor Manslaughter charge.

¶ 13 In our criminal justice system, the executive branch of the government retains broad discretion as to whether, when, and how to prosecute crime. *See generally Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985); *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). "The county attorney acts under a discretion committed to him for public good, and one of his most important functions is to select, out of what the law permits, the charges which he will bring against offenders." *Wilson v. State,* 89 Okl.Cr. 421, 425, 209 P.2d 512, 514 (1949). In a variety of contexts, we have reiterated that where a defendant's conduct is arguably covered by more than one criminal provision, the choice is a matter within the prosecutor's discretion, bounded by the constitutional requirement that the decision not be based on impermissible standards, such as race or religion. *See Cuesta–Rodriguez v. State,* 2010 OK CR 23, ¶ 64, 241 P.3d 214, 235 (prosecutor's decision to seek the death penalty); *Childress v. State,* 2000 OK CR 10, ¶ 18, 1 P.3d 1006, 1011 (prosecutor's decision to charge first-degree malice murder instead of second-degree felony murder); *Woodward v. Morrissey,* 1999 OK CR 43, ¶ 9, 991 P.2d 1042, 1045 (prosecutor's power to veto diversion of case to Drug Court program); *Funkhouser v. State,* 1988 OK CR 109, ¶ 13, 763 P.2d 695, 697 (prosecutor's election between First Degree Manslaughter and Second Degree Manslaughter); *Ward v. State,* 1981 OK CR 52, ¶ 11, 628 P.2d 376, 379 (prosecutor's discretion to elect between felony and misdemeanor variants of the crime of pointing a weapon at another); *Jones v. State,* 84 Okl.Cr. 81, 91, 179 P.2d 484, 489 (1947) ("[W]e have often held that one committing a crime may violate more than one statute, and it is within the discretion of the county attorney to determine under which statute charges will be preferred"); *Olney v. State,* 51 Okl.Cr. 309, Syl., 1 P.2d 799 (1931) ("As between specific statutes prescribing different penalties for any offense [in this case, first-degree robbery and 'conjoint' robbery], the state may elect to try an offender under either statute").

¶ 14 In *Hunt v. State,* 1979 OK CR 108, ¶¶ 7–12, 601 P.2d 464, 467–68, the defendant was charged with a felony crime involving obscene material, which carried up to fifteen years in prison. On appeal from her conviction, she argued that she should have been charged under a different, and more recent, statute—one which punished the same type of conduct as a misdemeanor. In rejecting this claim, we found the Supreme Court's analysis in *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), to be instructive. At issue in *Batchelder* were two federal laws, both of which criminalized the defendant's possession of a firearm, but which carried substantially different ranges of punishment; the provision with the more "lenient" punishment range was enacted last.

¶ 15 In a unanimous decision, the Supreme Court in *Batchelder* rejected a claim that multiple criminal statutes, which address the same or overlapping conduct, necessarily presented any due process or equal protection concerns. The Court saw no problem in the fact that the prosecutor could choose which statute to apply, so long as the selection "does not discriminate against any class of defendants." 442 U.S. at 123–24, 99 S.Ct. at 2204. Nor did the Court find anything unconstitutionally vague about an overlap in provisions:

That this particular conduct may violate both [provisions] does not detract from the notice afforded by each. Although the statutes create uncertainty as to which crime may be charged and therefore what penalties may be imposed, they do so to no

greater extent than would a single statute authorizing various alternative punishments. So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.

442 U.S. at 123, 99 S.Ct. at 2204. As for prosecutor discretion, the Court concluded that the power to elect among alternatives in prosecution and punishment "is no broader than the authority [prosecutors] routinely exercise in enforcing the criminal laws." *Id.* at 126, 99 S.Ct. at 2205.

¶ 16 Our recent holding in *Ceasar*—that the First Degree Misdemeanor Manslaughter statute does not distinguish among the type or category of misdemeanor on which a charge can be predicated—is not new. We made the same observation in *Bell*, 2007 OK CR 43, ¶ 3, 172 P.3d at 623, in holding that Driving While Impaired could serve as the basis for a Misdemeanor Manslaughter charge. This observation echoes our analysis in *Hopkins*, and can be traced all the way back to our first meeting with the Negligent Homicide statute, in *Ritchie v. Raines*. The statute is plain. Section 711(1) of Title 21 places no limitations on the type of misdemeanors which can serve as a predicate for First Degree Manslaughter.

¶ 17 Although the Negligent Homicide statute was enacted after the First Degree Manslaughter statute, and although it speaks specifically to motor-vehicle deaths, those facts do not require a different result. The chronology of enactment is not dispositive. Before concluding that a later statute "supersedes" or "repeals by implication" an earlier one, we must first conclude, not just that they overlap in their application, but that they are hopelessly repugnant to one another in some respect. *See Fenter v. State*, 1985 OK CR 13, ¶ 5, 695 P.2d 12, 13 ("a repeal by implication may be found only

when two statutes are so inconsistent that they may not [both] stand"); *Taylor v. State*, 1982 OK CR 8, ¶ 5, 640 P.2d 554, 556 ("a statute may be repealed by implication only if there are irreconcilable conflicts between the statutes; where such a conflict exists, the latter statute modifies the earlier"); *compare Simpson v. State*, 1992 OK CR 13, ¶ 8, 827 P.2d 171, 174 (when two statutes address same subject matter, both provisions are to be given effect, if such effect would not defeat intent of legislature). *See generally Barnard v. State*, 2005 OK CR 13, ¶ 11, 119 P.3d 203, 207 (recognizing the problems in finding "repeal by implication"). The Negligent Homicide statute says absolutely nothing about the situation where a motorist's "reckless disregard for the safety of others" *also* amounts to a misdemeanor offense.

¶ 18 There may very well be misdemeanor offenses in our law which, as a matter of public policy, are so *de minimis* that basing a felony First Degree Manslaughter charge upon them would never be appropriate. That decision, however, is one for the Legislature to make, not this Court. And as we have observed, it is within the Legislature's authority to write laws so that a particular course of conduct might be prosecutable under more than one provision. Indeed, it would be folly to attempt to render all criminal statutes mutually exclusive in their application. The legal consequences of a single set of facts are so often debatable— such as whether a killing was done with premeditation (which is murder) or was committed in a heat of passion (which is manslaughter). Prosecutorial discretion in charging, of course, means more than the power to choose at whim among alternative provisions. The choice should involve thoughtful consideration of all the facts and circumstances of the particular case. But it is not the province of this Court to eliminate discretion that the Legislature apparently intended.[5]

**5.** Appellee cites a number of cases where a defendant motorist was convicted of Negligent Homicide, when the circumstances at least suggested that the death was causally related to the defendant's commission of a misdemeanor. In his view, these cases support a conclusion that Negligent Homicide would be the *only* appropri-

ate charge in similar circumstances. We disagree. In some cases, the defendant was charged with First Degree Manslaughter, but the jury returned a verdict on Negligent Homicide as a lesser related offense. *See e.g. Hames v. State*, 1991 OK CR 102, 818 P.2d 904; *Whittmore v. State*, 1987 OK CR 192, 742 P.2d 1154. In other

¶ 19 In summary, we reiterate our holding in *Ceasar* that, so long as a causal relation can be established between the misdemeanor and the homicide, any misdemeanor could conceivably serve as a predicate for First Degree Manslaughter, consistent with the plain, unambiguous wording of that statute. *Short v. State,* 1977 OK CR 44, 560 P.2d 219, and *Atchley v. State,* 1970 OK CR 76, 473 P.2d 286, are overruled to the extent they are inconsistent with today's pronouncement. We express no opinion on the propriety, in a Manslaughter prosecution, of Negligent Homicide as an alternative charge in the Information (22 O.S.2011, § 404), or as an alternative theory of culpability for the fact-finder to consider as a "lesser related offense" (22 O.S.2011, § 916), as such depends, again, on the particular facts of the case.

## DECISION

¶ 20 The District Court's order granting Appellee's motion to quash for insufficient evidence is **REVERSED,** and the matter is **REMANDED** to the District Court for further proceedings consistent with this opinion. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2012), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

A. JOHNSON, P.J., LEWIS, V.P.J., LUMPKIN, J., and SMITH, J.: concur.

cases, the defendant went to trial on a charge of Negligent Homicide. *See e.g. Fiddler v. State,* 1985 OK CR 139, 709 P.2d 205; *Thompson v. State,* 1976 OK CR 197, 554 P.2d 105. To us, these cases only underscore the discretion prosecutors have, depending on the circumstances, in what charges to bring; and the authority juries have, under the right facts, to return a verdict on a lesser related offense.

This same pattern can be seen in older cases, even ones predating the Negligent Homicide statute. *See e.g. Hopkins,* 1973 OK CR 40, ¶ 1, 506 P.2d at 580 (defendant charged with First Degree Manslaughter, but convicted of Negligent Homicide); *Ritchie,* 1962 OK CR 101, ¶ 25, 374 P.2d at 777 (defendant charged with First Degree

Manslaughter; his plea to Second Degree Manslaughter *held* factually and legally supportable). In *Clark v. State,* 63 Okl.Cr. 138, 73 P.2d 481 (1937), the defendant was charged with First Degree Felony Murder in the commission of Driving Under the Influence of Intoxicants. We upheld his conviction for the lesser offense of Second Degree Manslaughter: "The jury, under the law and facts in this case, might have been justified in finding the defendant guilty of a greater offense, but ... defendant cannot be heard to complain that he has been convicted of a less [sic] offense than the one he actually committed." 63 Okl.Cr. at 147, 73 P.2d at 485 (citation omitted).